Norman v. State.

### W. C. NORMAN v. STATE.*

#### (Nashville.   December Term, 1912.)

CRIMINAL LAW.   Where, after violation of the age of consent law, the accused and the female in question marry, she is incompetent as a witness during such marriage relation; in what excepted offenses, committed by husband against the wife, she is a competent witness; effect of statute in civil cases.

While the proposition is unquestionably sound that, by way of exception to the general rule of incompetency, the wife is competent to testify against her husband whenever she is the individual directly injured by a crime committed by her husband, or is otherwise injured by him, and where the facts are peculiarly within her knowledge and impossible or difficult of proof by any other witness; but the wife cannot be competent as a witness against the husband upon his trial for an offense consisting of violence to her person or other injury to her, unless the act occurred during the existence of the marriage relation or was brought within it by force exerted by him, beginning before and continuing into and beyond the beginning of that relation. Therefore, where subsequent to the violation of the age of consent law by having carnal knowledge of a female under the age of twenty-one years, the female in question, without coercion, married the accused, she is not a competent witness against him in his trial for the offense during their marriage relation. The statute (Acts 1879, ch. 200, compiled in Shannon's Code, secs. 5596 and 5597), qualifying husband and wife as competent witnesses for and against each other in civil actions, notwithstanding their marriage relation, with the exception of matters occurring between them by virtue of or in consequence of their marriage relation, is in effect a declaration that the

---

*The authorities on the question of the competency of a husband or wife as witness against the other in criminal prosecutions are reviewed in notes in 2 L. R. A. (N. S.), 862; 22 L. R. A. (N. S.), 240; and 41 L. R. A. (N. S.), 1213.

Norman v. State.

general rule of incompetency as established by the common law shall remain and continue to be the rule in criminal cases against the one spouse when the other is offered as a witness.

Code cited and construed: Secs. 5596, 5597 (S.); secs. 4563, 4564 (M. & V.).

Acts cited and construed: Acts 1879, ch. 2C ,.

Cases cited and approved: Goodwin v. Nicklin, 6 Heisk., 256; Patton v. Wilson, 2 Lea, 105 (citing and reviewing Brewer v. Ferguson, 11 Humph., 565; Kimbrough v. Mitchell, 1 Head, 450; State v. McAuley, 4 Heisk., 424; and Goodwin v. Nicklin, 6 Heisk., 256); Owen v. State, 89 Tenn., 698; State v. Bean, 104 Mo. App., 255; State v. Woodrow (W. Va.), 2 L. R. A. (N. S.), 863; People v. Curiale, 137 Cal., 534; State v. McKay, 122 Iowa, 658; State v. Frey, 76 Minn., 527; People v. Schoonmaker, 177 Mich., 191; State v. Evans, 138 Mo., 116; Moore v. State (Tex. Cr. App.), 67 L. R. A., 499, and notes.

## FROM DAVIDSON.

Appeal from the Criminal Court of Davidson County. —A. B. NEIL, Judge.

ALLEN & ALLEN and JOHN E. TURNEY, for Norman.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

Mr. JUSTICE BUCHANAN delivered the opinion of the Court.

Norman has appealed from a judgment by which he was consigned to the penitentiary for a term of three years. This judgment was based upon the verdict of a jury under an indictment which charged that Norman

did, unlawfully and feloniously, carnally know one Willie Ruby Scott, a female, on the —— day of May, 1911; Willie Ruby Scott being then and there over the age of twelve and under the age of twenty-one years.

Many assignments of error have been here made, but a consideration of one only is sufficient to dispose of the case.

Under our statute, chapter 36 of the Public Acts of the general assembly of the year 1911, it is provided that "any person who shall carnally know or abuse a female under the age of twelve years shall, on conviction, be punished as in case of rape; and any person who shall unlawfully or carnally know a female over the age of twelve and under the age of twenty-one years shall, on conviction, be deemed guilty of a felony in all cases not falling under the statute relating to rape and shall be confined in the penitentiary not less than three nor more than ten years."

There are other provisions of this statute not necessary to be here set out.

Under the above statute, Norman was indicted and convicted as stated. On the 23d of September of the year 1911, Norman and Willie Ruby Scott became man and wife by a marriage ceremony duly solemnized. This marriage occurred after a prosecution had been set on foot, charging him with the offense of which he was convicted in this cause, and, from the evidence before us, it is clear that the marriage, so far as he was concerned, was entered into for the express purpose of shielding himself against prosecution for that offense. After this

marriage, and before the trial in the court below, there was some financial contribution by the husband toward the support of the wife; but this was wholly insufficient in amount for her support and maintenance, and they never resided in the same house as husband and wife after marriage. During the time intervening between the marriage and trial she continued to reside with her mother and her stepfather, and he resided elsewhere.

On the trial in the court below, the State offered the evidence of the wife as a witness against her husband, and over his seasonable objection and exception to her evidence, and notwithstanding her admission that she was his wife, the trial court allowed her to testify to the commission by him of the offense with which he was charged. It is clear from the record that, in the absence of her testimony, the State, could not have made out its case against him; and the question here presented is: Was the court in error in admitting her evidence?

We have no legislation in this State relaxing, in criminal cases, the general rule of the common law that "one spouse may not testify against the other over the objection of the latter." *Owen* v. *State,* 89 Tenn., 698, 16 S. W., 114. And the question here is whether this case falls within that general rule of the common law, or whether it falls within a recognized exception to that general rule.

In 1 Greenleaf on Evidence (16th Ed.), sec. 333c (pp. 493, 494), it is said that testimony by a husband or wife may involve any one or more of three independent principles, viz.:

(1) "One spouse may not testify for the other."

(2) "One spouse may not testify against the other."

(3) "One spouse may not testify to confidential communications by the other."

It is there said, further, that under the first and third heads the exclusion is absolute—there are no exceptions —while under the second head (that invoked by plaintiff in error in the present case) "there are some well-established exceptions based on reasons of necessity."

The subsequent section (343) is devoted to said "exceptions." The latter section is as follows:

"To this general rule excluding the husband and wife as witnesses, there are some exceptions, which are allowed from the necessity of the case, partly for the protection of the wife of her life and liberty, and partly for the sake of public justice. But the necessity which calls for this exception for the wife's security is described to mean, 'not a general necessity, as where no other witness can be had, but a particular necessity, as where, for instance, the wife would otherwise be exposed, without remedy, to personal injury.' Thus, a woman is a competent witness against a man indicted for forcible abduction and marriage, if the force were continuing upon her until the marriage, of which fact she is also a competent witness; and this, by the weight of the authorities, notwithstanding her subsequent assent and voluntary cohabitation, for otherwise the offender would take advantage of his wrong. So, she is a competent witness against him for a rape committed on her own person, or for an assault and battery upon her, or for

maliciously shooting her (or for incest). She may also exhibit articles of the peace against him, in which case her affidavit shall not be allowed to be controlled and overthrown by his own. Indeed, Mr. East considered it to be settled that, 'in all cases of personal injuries committed by the husband or wife against the other, the injured party is an admissible witness against the other.' But Mr. Justice Holroyd thought that the wife could only be admitted to prove facts which could not be proved by any other witness."

Notwithstanding all that is said in the foregoing quotation from Mr. Greenleaf, it is manifest that in all the exceptions mentioned in his text the ground of the relaxation of the rule is the necessity for the protection of the wife from personal, or other, injury at the hands of the husband during the marital relation. Even the exception mentioned by him, where the wife was held to be a competent witness against her husband indicted for her forcible abduction and marriage to him; for, by his text, this exception is made to depend upon the fact that the force continued after the abduction and until the marriage, and the manifest ground of this exception is that such a marriage does not create the relation of husband and wife, she not being his wife *de jure* for lack on her part of consent to the marriage contract. And each of the other exceptions noted by the author in his text depends upon the necessity for the protection of the wife against violence, or other injury at the hands of the husband occurring during the marital relation.

The general common law rule of the incompetency of either spouse over objection to testify against the other, or for the other, has long been recognized in this State.

In *Goodwin* v. *Nicklin,* 6 Heisk., 256, this court, in an opinion delivered by Mr. Justice Turney, held:

"Husband and wife are not competent witnesses for or against each other under the acts of the legislature of the 13th of March, 1868, and of the 24th of February, 1870. . . . The common law places the rejection of such evidence upon the high ground of public policy, and because greater mischief or inconvenience would result from the reception than from the exclusion of such evidence. On this account, it is a general rule that the husband or wife cannot give evidence to affect each other, either civilly or criminally; for to admit such evidence would occasion domestic dissension and discord. It would compel a violation of that confidence which ought, from the nature of the relation, to be regarded as sacred, and it would be arming each of the parties with a means of offense which might be used for dangerous purposes. Sharswood's Starkie, Evidence, 39.

"We see from this, that it is the policy to secure peace to families and society."

The above case was decided in 1871.

In *Patton* v. *Wilson,* 2 Lea, 105, this court, speaking through Mr. Justice Cooper, said:

"By the common law, parties were in general excluded from being witnesses for themselves, and the rule was extended to husband and wife; neither of them being

admissible as witnesess in a cause, civil or criminal, in which the other was a party.  The exclusion of husband and wife was founded partly upon the identity of their legal rights and interests, and partly on principles of public policy which lie at the basis of civil society.  Co. Litt., 6b; *Barker* v. *Davis,* Rep. temp. Hardw., 264; *Vowles* v. *Young,* 13 Ves., 144."

The opinion of the court in the case last cited refers to and comments upon the following Tennessee cases: *Brewer* v. *Ferguson,* 11 Humph., 565; *Kimbrough* v. *Mitchell,* 1 Head., 450; *State* v. *McAuley,* 4 Heisk., 424; *Goodwin* v. *Nicklin,* supra.

In *Patton* v. *Wilson,* supra, the court, evidently referring to the acts of March 13, 1868, and February 24, 1870, further said:

"We have held in several cases that the recent acts, declaring that no person shall be incompetent to testify because he or she is a party to the record or interested in the issue, was not intended to affect the rule of evidence which excludes the husband and wife from being competent witnesses for or against each other.  This rule, so far as it rests on public policy for the preservation of the harmony of the marital relation, continues in full force."

This case was decided in 1878.

Following the foregoing decisions by this court, chapter 200 of the Acts of the General Assembly of the year 1879 (the substance of which appears in sections 5596 and 5597 of Shannon's Code) was passed.

The effect of the act of 1879 was to make husband and wife competent witnesses in all civil actions in the courts of this State, notwithstanding their relationship, provided that neither of them "shall testify as to any matter that occurred between them by virtue or in consequence of the marital relation."

But the act passed in 1879 left the common law in force in so far as the competency of either for or against the other in criminal actions was concerned, as was held by this court in *Owen* v. *State*, 89 Tenn., 698, 16 S. W. 114, already referred to.

In the latter case, Owen was indicted for incest committed on the body of his step-daughter. Owen offered his wife as a witness in his behalf on the trial in the court below, and her evidence was excluded, upon which action of the court Owen assigned error. This court, speaking through Mr. Justice Snodgrass, said:

"There was no error in excluding the wife on objection. At common law, she could not be a witness for her husband in such case, and we have no statute changing the rule."

This case was decided in 1890.

We have had no legislation in this State since the decision in the case of *Owen* v. *State,* supra, affecting the competency of husband and wife to testify for or against each other in criminal actions.

It is, however, urged on behalf of the State that the case at bar falls within an exception to the common law rule of incompetency announced by the Court of Appeals of Missouri in *State* v. *Bean,* 104 Mo. App., 255,

78 S. W., 640, wherein that court used the following language:

"Another exception to the rule is to permit the wife to testify against the husband whenever she is the particular individual directly injured by the crime committed by her husband, and the facts are peculiarly within her knowledge, and impossible, or difficult, of proof by any witness other than the wife."

It appears from the report of that case that it was a prosecution of the husband for abandonment of, and failure to provide for, his wife; and it was there held that the wife was a competent witness against the husband.

It is also said in behalf of the State, that all the authorities agree that, in a prosecution against a husband for an assault upon his wife, the wife is a competent witness against the husband, and to sustain this proposition, we are referred to the case notes upon *State* v. *Woodrow* (W. Va.), 2 L. R. A. (N. S.), 863.

We do not question the soundness of the proposition that, by way of exception to the general rule of incompetency, the wife is competent to testify against her husband whenever she is the individual directly injured by a crime committed by her husband, or is otherwise injured by him, and where the facts are peculiarly within her knowledge and impossible or difficult of proof, by any other witness. This was the principle announced in *State* v. *Bean,* supra, and it is also the ground on which many of the cases were decided which are cited in the note above referred to. Cases falling within this

principle are well-recognized exceptions to the general
rule at common law.

But does the case at bar fall within that principle?
Here the wife was offered as a witness against her
husband to make proof of an offense committed by him,
not upon her as his wife, but at a time before she became
his wife; and the important question here ai sing is:
Can such a case be said to fall within an exception
known to the common law?

If the wife in this case be held a competent witness
to testify to a crime committed upon her body by Nor-
man before he became her husband, it is difficult to see
by what process of reasoning the wife could be rejected
as a witness in a case where, before her marriage, she
should see her husband commit a crime upon the body
of a third person; and to hold her a competent witness
in the latter case works a destruction of the general rule
of incompetency which has come down to us from the
common law in an unbroken line of decisions.

It is not for this court to declare a new public policy
for this State, on this subject. The failure of the legis-
lature to include criminal actions in the act of 1879 is,
in effect, a declaration by the legislative department
of the State that the general rule of incompetency as
fixed by the common law should remain the rule or
public policy in this State so far as the competency of
husband and wife as witnesses for and against each other
in criminal cases is concerned; and by that declaration,
this court is bound.

There is no case in this State to which we may refer as supporting our view of this question. We have been referred to five cases, however, decided by courts of last resort in other States, which, we think, support our view:

*People* v. *Curiale,* 137 Cal., 534, 70 Pac., 468, 59 L. R. A., 588.

In that case it appears that a statute of California provided that neither husband nor wife should be a competent witness for or against the other in any criminal action, except "in cases of criminal violence upon one by the other."

The court held that, as the crime charged was not an act or crime committed by defendant upon his wife, but was an act committed upon the person of a woman before she became his wife, she, after becoming his wife, was not a competent witness against him. The defendant in that case was indicted for rape, in that he had carnal knowledge of a girl who was only sixteen years old, and who afterwards became his wife, and was offered as a witness against him on the trial.

*State* v. *McKay,* 122 Iowa, 658, 98 N. W., 510.

In that case the Iowa statute under which that case was decided provides that "neither the husband nor the wife ' ill, in any case, be a witness against the other except in a criminal prosecution for a crime committed one against the other, or" (and then follow certain exceptions in civil cases).

The Iowa court held that the statute contemplated a crime committed by one spouse against the other "while

they occupy that relation," and, therefore, under the general prohibition of the statute, the wife was not competent as a witness against the husband, where the crime was committed before the marriage.

*State* v. *Frey,* 76 Minn., 527, 79 N. W., 518, 77 Am. St. Rep., 660.

In that case the statute was substantially the same as the Iowa statute involved in *State* v. *McKay,* supra; and the Minnesota court held substantially as did the Iowa court, saying:

"The statute deals with the parties in the marriage relation, and not as to the acts committed before the marriage."

And further:

"The proposition that a guilty man may defeat the ends of justice by marrying after the act the principal witness for the State seems at first blush to be contrary to the dictates of common sense and common justice. . . . Whether the claims of public justice in such case are superior to the considerations of public policy upon which the prohibition rests is a debatable question, the solution of which belongs exclusively to the legislature."

To the same effect, in substance, as the cases above mentioned, are *People* v. *Schoonmaker,* 177 Mich., 191, 75 N. W., 439, 72 Am. St. Rep., 560, and *State* v. *Evans,* 138 Mo., 116, 39 S. W., 462, 60 Am. St. Rep., 549. See, also, *Moore* v. *State* (Tex. Cr. App.), 67 L. R. A., 499, and the notes thereon.

Norman v. State.

Upon the question of the rule and its exceptions at common law, the authorities cited in the note to *Moore* v. *State,* supra, are *Lord Audley's Case,* 3 How. St. Tr., 414; 1 Blackstone, Com., 443 and 208; *Wakefield's Case,* 2 Lewis, C. C., 1-279; *Queen* v. *Yore,* 1 Jeb. & S., 563; *Brown's Case,* 1 Vent., 243; *Fulwood's Case,* Cro. Car.; *Rex* v. *Locker,* 5 Esp., 107; *Rex* v. *Sergeant, Ryan & M.,* 352; *King* v. *Perry,* 1 Hawk. P. C., ch. 41; *Haagan Swendsen's Case,* 5 St. Tr., 456; *Pedley* v. *Wellesley,* 3 Car & P., 558.

From these authorities as digested in the note are deducible the conclusions reached by Mr. Greenleaf already quoted.

We find in none of these cases any warrant for the conclusion that the wife would be competent as a witness against the husband upon his trial for an offense consisting of violence to her person or other injury to her, unless the act occurred during the existence of the marriage relation, or was brought within it by force exerted by him, beginning before and continuing into and beyond the beginning of that relation; and we think the ground of exception in cases of forcible abduction and marriage, under St., 3 Henry VII, chapter 2, was that there was no free consent by the so-called wife to the marriage contract, and hence no marriage, and no wife *de jure,* so that she, who in such case was offered as a wife witness, was in law not a wife.

In the case at bar, the element of force as affecting the wife's consent to the marriage contract is wholly

lacking; she entered into it free from coercion; she tes-
tifies that, before the first act of intercourse between her
and defendant, he promised to marry her if she would
yield to his desire; and it is manifest that she did yield,
and that without force exerted by him. She also testi-
fies that she loved him, and wished to marry and live
with him as a wife. To be sure, it may be well said
that she, by virute of our statute, could not consent to
the first act of intercourse, yet she could and did consent
to the marriage contract, for she was well over the age
enabling her to make that contract.

So the point here is that, if the first act be conceded
to have been a penal offense accomplished by force, since
she was disabled to consent to it, yet it was a wrong
wholly unconnected with her consent to the marriage,
and can in no sense be said to have caused her consent,
since it is clear that both before and after the marriage
it was her desire to be his wife, and that she by the
marriage became a wife *de jure,* and not, as in the Lord
Audley and other abduction cases, merely a wife *de fac-
to,* we have no doubt.

The statute, 3 Henry VII, ch. 2, was passed for the cor-
rection of an evil prevalent in feudal times and vulgar-
ly known as "stealing an heiress;" and such crimes
were, in general done by force, as in *Lord Audley's Case,*
though in *Wakefield's Case,* consent of the lady was ac-
complished by means of fraud, which was held to amount
in law to force, so that her consent to the marriage
was not freely given; and it is to be observed that the
admission of the evidence of the female in such cases

does not really, on analysis, amount to an exception to the general rule, since the evidence admitted was not that of a wife by the law.    Blackstone, book 4, chapter 15.

We agree with the Minnesota court in that portion of its opinion above quoted from *State* v. *Frey*, supra. And in respect to its suggestion as to whether the claims of public justice in such a case as the one at bar are superior to the considerations of public policy upon which the prohibition rests, we suggest that an argument in favor of the incompetency of the wife as a witness in such a case on the grounds of public policy is the welfare of children born as a result of illicit relations between their parents, who might be legitimatized by the marriage between the parents, although made for the purpose on the part of the father of avoiding prosecution for unlawful carnal knowledge of the mother.

Another consideration of weight, is that, if the wife be held incompetent to testify in such cases, marriage will undoubtedly with more frequency follow the illicit relation, and thus, perhaps in many cases, both mother and child be saved the shame and degradation which inevitably follows a successful prosecution of the husband and father.

No public policy is sound which, in the name of public justice, invades the home and takes therefrom the wife as a witness against the husband or the husband against the wife, and by means of the evidence of one, consigns the other to the gallows, the penitentiary, or the jail. An increased number of convictions might result from

such a policy, but at a cost which the public could ill afford. The home is the sanctuary of our civilization, and the increased number of convictions would not compensate for the homes destroyed.

If the case on its facts falls within any well-recognized exception known to the common law, such evidence, of course, must be admitted; but, even in such a case, its influence on society is hurtful.

Upon a full consideration, we are constrained to hold that the wife was not a competent witness in this case, and, as we think the conviction of the defendant would not have resulted if she had been excluded as a witness, the cause must be reversed and remanded for a new trial.