[Crim. No. 905. Department One.—October 27, 1902.]

THE PEOPLE, Respondent, v. BARTOLO CURIALE, Appellant.

CRIMINAL LAW—RAPE PRIOR TO MARRIAGE—INCOMPETENCY OF WIFE AS WITNESS.—A married woman is not a competent witness against her husband to prove the crime of rape committed by him prior to the marriage in having sexual intercourse with her while under the age of sixteen years, where it appears that she freely consented to the marriage, and to subsequent cohabitation.

ID.—CONSTRUCTION OF CODE—EXCEPTION OF "CRIMINAL VIOLENCE."— Section 1322 of the Penal Code, which provides that "except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties," the exception of "criminal violence" is confined to such violence committed by one spouse upon the other during marriage, and has no reference to the crime of rape committed by the man upon the woman prior to marriage.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion.

Henry W. Nisbet, for Appellant.

Tirey L. Ford, Attorney-General, A. A. Moore, Jr., Deputy Attorney-General, and J. W. Curtis, District Attorney, for Respondent.

COOPER, C.—Defendant was convicted of the crime of rape and sentenced to ten years in the state prison at Folsom. He appeals from the judgment and order denying his motion for a new trial.

The facts are substantially as follows: Francesco Petruccelli is the father of Isabella and the husband of Mrs. Petruccelli, who is the stepmother of Isabella. In December, 1900, and for some time prior thereto, the family lived in San Bernardino. The defendant had been boarding with the family, and living in the same house, for about three months. The daughter, Isabella, was then under fifteen years of age, but had been receiving attentions from defendant, going buggy-riding with him, and to different places, apparently with the approbation of the parents. He had asked Isabella to marry him, but it is not clear that she had promised to do so. Isabella had, prior to December 15, 1900, promised to go with defendant to Redlands, for the purpose of having him buy her some shoes and clothing. On the afternoon of said day, Isabella, with the consent of her parents, went to Redlands for the purpose of meeting the defendant. He met her at the depot, and they then went to a restaurant and had "supper." After that they went to the shoe-store, where defendant bought the girl a pair of shoes, and to a dry-goods store, where he bought cloth for a dress and gave it to her. They then went to defendant's room in the hotel, or lodging-house, where they slept in the same bed and had sexual intercourse. They had breakfast together next morning, and returned on the train together to San Bernardino, and together went to the house of the girl's father. The girl told her stepmother and her father of what had occurred, and it does not seem that defendant made any attempt to conceal it. He told the stepmother on Sunday, the 16th of December, that he intended to marry the girl; and on Monday, the 17th, they were married, with the consent of the girl's father and stepmother. The father went with defendant to the county clerk's office to get the marriage license, and made an affidavit stating that he was the father and guardian of the girl, and that he consented to the marriage.

After the marriage the defendant and Isabella lived together as husband and wife until the latter part of June, 1901.

The information was filed on the seventh day of September, 1901, charging the defendant with the crime of rape on the sixteenth day of December, 1900, in having sexual intercourse with Isabella Petruccelli, then and there under the age of sixteen years. Defendant's wife, Isabella, was allowed, under his objection, to testify against him as to the facts occurring at the hotel at Redlands, and which facts are here claimed to constitute the crime of rape. It is claimed that the admission of this testimony was error, and this is the controlling question in the case. It is provided in the Penal Code, section 1322:—

"Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties."

The defendant was a party, and his wife was called and testified against him without his consent. The crime charged was not an act or crime committed by defendant upon his wife. The crime charged was upon the person of Isabella Petruccelli, and committed before she became the wife of defendant. "Criminal violence upon one by the other" means what it says, criminal violence upon the wife by the husband, or criminal violence upon the husband by the wife.

The statute is founded upon public policy. It prohibits, in general terms, the examination of one spouse against the other without his or her consent. For the purpose of protecting one against the criminal violence of the other, the statute provides further that the prohibition shall not apply to cases of criminal violence by one upon the other,—that is, by one spouse upon the other spouse. The exception does not extend to acts committed before the marriage. This has been the uniform interpretation of similar statutes in other states, so far as we are advised.

In *State* v. *Evans*, 138 Mo. 116,[1] the defendant was charged with rape upon a female child of the age of thirteen years. Defendant and the girl were afterwards, and before the finding of the indictment, lawfully married. The court held that the wife was not a competent witness as to the act that took place before the marriage. In the opinion it is said: "It is urged by the attorney-general that this case falls within the

[1] 60 Am. St. Rep. 549.

exceptions to the general rule; that it is a criminal injury to the wife. This contention ignores the limitations of the exception itself. *Ex vi termini,* a wife is only admitted to testify concerning criminal injuries to herself, a wife, not to a woman who was not, at the time of the injury, the wife of the defendant.''

Minnesota has a statute similar to ours, which provides: ''A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, . . . but this exception does not apply to . . . a criminal action or proceeding for a crime committed by one against the other.''

In *State* v. *Frey,* 76 Minn. 527,[1] it was held, upon an indictment for rape by the husband upon the wife prior to marriage, and when she was of the age of fourteen years, that she was incompetent to testify. It was said in the opinion: ''The statute deals with the parties in the marriage relation, and not as to acts committed before the marriage.''

In Texas the statute is similar to ours, and the exception is, ''except in a criminal prosecution for an offense committed by one against the other.'' It was held that the wife under the above statute could not be permitted to testify to an abortion produced by the husband upon her prior to her marriage. (*Miller* v. *State,* 37 Tex. Crim. Rep. 576.)

In *People* v. *Schoonmaker,* 117 Mich. 190,[2] the defendant was prosecuted for rape alleged to have been committed by having intercourse with his wife before marriage and while she was under the age of consent. The court held the evidence of the wife incompetent and reversed the case.

And the rule here stated, and adopted in the cases cited, is in accord with the common law. In Hale's Pleas of the Crown (vol. 1, p. 301) it is stated that, upon an indictment for taking away and forcibly marrying a woman, the woman so married may be sworn against her husband, if the force were continuing upon her till the marriage, for the reason that, though a marriage *de facto,* yet if it were effected by a continued act of force, it was not a marriage *de jure,* unless ratified by a subsequent free cohabitation or consent. The cases of Lady Tulwood M. 13 Car. 1, B. R. Croke, and of Brown. Trin. 25 Car. 2, are referred to as authority, but the author, in speaking of the views of the judges, says:—

---

[1] 77 Am. St. Rep. 660.          [2] 72 Am. St. Rep. 560.

"But most were of the opinion that, had she lived with him any considerable time and consented to the marriage by a free cohabitation, she would not have been admitted as a witness against her husband." In the case at bar, if the girl had never freely consented to the marriage and cohabitation with defendant, the question would be different.

Again, the statute prohibits the wife from being a witness against her husband, except in cases of "criminal violence" upon her. If the crime charged should be regarded with reference to the person of the wife, regardless of the question as to whether she was the wife at the time of its commission, still we do not think it is a charge of criminal violence under the statute. The act of having sexual intercourse with a female under the age of sixteen with her consent is not an act of criminal violence. It is a crime because made so by statute. (*People* v. *Vann*, 129 Cal. 118, and cases cited.)

Our legislature has seen fit to make the act of sexual inter- course with a female under the age of sixteen rape, regardless of the question of consent. The female may be a volup- tuous, abandoned woman, and may even solicit the male, but under the statute the party so solicited must resist at his peril. Even then, though he resist like Joseph of old, Poti- phar's wife may cry out against him and hold up his garment as evidence. The act is a crime regardless of the question of violence.

In *Miller* v. *State*, 37 Tex. Crim. Rep. 576, it was held that administering drugs to a female for the purpose of producing an abortion was not personal violence. The court said: "They subsequently married, and the statute by its terms excludes the wife from testifying against her husband, except as to acts of personal violence against her. However, the acts constituting and causing the alleged abortion in this case were the administration of certain drugs, no force being used in the determination thereof, and apparently with her consent."

The statute of Utah is in the exact language as ours, and in *Bassett* v. *United States*, 137 U. S. 499, it was held that the crime of polygamy was not a criminal act of violence by the husband toward the wife, and that the wife was not a com- petent witness. It is claimed that the rule here adopted will prevent such crimes from being punished. We must construe

the law, and not attempt to make it. But it is not apparent to us that it would be any great injustice to forbid the woman who marries a man freely, and lives with him as his wife, from testifying that he had sexual intercourse with her before she was sixteen years old and prior to her marriage. The act was with her consent. She knew it when she gave to him her vow to be his good and lawful wife. Her moral turpitude is perhaps as great as his.

It follows that the court erred in admitting the testimony, and that the judgment and order should be reversed.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are reversed.

Harrison, J., Van Dyke, J., Garoutte, J.