[Civ. No. 19747.   First Dist., Div. One.   Apr. 3, 1961.]

JOYCE LORRAINE YOUNG, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

Herman W. Mintz, John A. Gunning, James Giller and David A. Himmelman for Petitioner.

Stanley Mosk, Attorney General, Arlo E. Smith and Albert W. Harris, Jr., Deputy Attorneys General, J. R. Coakley, District Attorney, and Jerry G. Murphy, Deputy District Attorney, for Respondents.

BRAY, P. J.—Petition for writ of prohibition to compel the superior court to desist from further proceedings in a criminal case.

### QUESTION PRESENTED

Has a husband physically injured by his wife a privilege to refuse to testify against the wife in a criminal action based on that injury?

### RECORD

Defendant shot her husband, Jeremiah, inflicting two bullet wounds on his body. Thereafter she was charged with violation of section 217, Penal Code (assault on Jeremiah with intent to commit murder). At the preliminary examination, Jeremiah refused to testify, claiming privilege under section 1322, Penal Code. The magistrate, over defendant's objection, ordered Jeremiah to testify. He did. Defendant was held to answer. After information was filed charging defendant with violation of section 217, Penal Code, defendant moved to set it aside on the ground that the magistrate erred in compelling Jeremiah to testify which motion was denied. Defendant then filed said petition.

## Injured Spouse Has No Privilege

█ It is clear that in a criminal prosecution based on the physical injury to him, an injured spouse has no privilege not to testify and may be compelled to testify.

The pertinent statutes involved are set forth below:

Code of Civil Procedure, section 1881, subdivision 1: "A husband can not be examined for or against his wife without her consent, nor a wife for or against her husband, without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; *but this exception does not apply* to a civil action or proceeding by one against the other, *nor to a criminal action or proceeding for a crime committed by one against the other,* or for a crime committed against another person by a husband or wife while engaged in committing and connected with the commission of a crime by one against the other; or in an action for damages against another person for adultery committed by either husband or wife." (Emphasis added.)

Penal Code, section 1322: "Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both, *or in case of criminal actions or proceedings for a crime committed by one against the person or property of the other,* whether before or after marriage or *in cases of criminal violence upon one by the other,* or upon the child or children of one by the other or in cases of criminal actions or proceedings for bigamy, or adultery, or in cases of criminal actions or proceedings brought under the provisions of section[s] 270 and 270a of this code or under any provisions of the 'Juvenile Court Law.' " (Emphasis added.)

█ Defendant argues that the basic requirement in both sections hereinbefore quoted, that a spouse may not testify without the consent of both spouses, carries into the exceptions therein set forth, and hence the husband has a privilege to refuse to testify in any case involving his wife. But it is clear in reading the sections that the requirement of consent of both does not apply to the situations set forth after the words "but this exception does not apply" in section 1881, subdivision 1, Code of Civil Procedure, and "or in case of" in section 1322, Penal Code.

The question here is one of first impression in California,

possibly because the said code sections are so clear that no litigant heretofore deemed it worthwhile to raise the question.

▄▄▄ There has been an interchange of the terms "privilege" and "competence" in referring to the rights of spouses under the two sections. However, the proper term is "privilege," as it is the privilege of a spouse to prevent the other spouse who is a competent witness from testifying under the circumstances set forth in the sections. Thus, "competency" as it is used in section 1322 really means "privilege." If a spouse comes within the exceptions in that section, the "privilege" does not exist. (See *In re Strand* (1932), 123 Cal.App. 170, 172 [11 P.2d 89]; *People* v. *Wilkins* (1955), 135 Cal. App.2d 371, 379 [287 P.2d 555].) It has frequently been held that when one spouse directs a criminal act towards the other, the injured spouse becomes "competent" to testify against the other. (See *People* v. *Pittullo* (1953), 116 Cal. App.2d 373, 377 [253 P.2d 705]; *People* v. *Tidwell* (1943), 61 Cal.App.2d 58, 61 [141 P.2d 969]; *In re Kellogg* (1940), 41 Cal.App.2d 833 [107 P.2d 964]; *In re Kantrowitz* (1914), 24 Cal.App. 203, 205 [140 P. 1078]; *People* v. *Rader* (1914), 24 Cal.App. 477, 484 [141 P. 958].)

At common law neither husband nor wife could testify in an action to which the other was a party. (8 Wigmore, Evidence, 3d ed., 1940, § 2227.) The reason was that the husband and wife were one in the eyes of the law, and since the litigant spouse was incompetent to testify because of *interest*, the other spouse also was considered incompetent. Thus, in the beginning the rule was based primarily on "competency" to testify rather than on "privilege" not to testify. As time went on a litigant became no longer disqualified because of *interest*, and two new reasons were developed. One was that because of the identity of interest between the two, one spouse ought not to testify *for* the other because of possible bias. The second reason and the one upon which, for many years, even in this country, emphasis was placed, was that domestic harmony and confidence would be in peril if one spouse could testify *against* the other.[1] Under this rule one spouse could injure the other criminally with impunity. Because of this, an exception to the rule developed because of necessity. This exception allowed the injured spouse to testify against the other for offenses against his or her person.

[1] For an excellent treatise on the historic development of the marital privilege rule, see "The Marital 'For and Against' Privilege in California," (1956), 8 Stanford L. Rev., 420 et seq.

The federal courts have entirely abolished the common-law rule of disqualification of one spouse to testify *for* the other in criminal actions. While some federal courts have indicated that the common-law disqualification of one spouse to testify *against* the other should be abolished (see *Lutwak* v. *United States* (1953), 344 U.S. 604, 614 [73 S.Ct. 481, 97 L.Ed. 593]; *Thouvenell* v. *Zerbst* (1936), 83 F.2d 1003, 1004; *Yoder* v. *United States* (1935), 80 F.2d 665, 667-668 (both 10th Circ.)), the only cases in which they have done so are cases involving the Mann Act. One of these is *Wyatt* v. *United States* (1960), 362 U.S. 525 [80 S.Ct. 901, 4 L.Ed.2d 931], where the defendant was charged with transporting his wife in interstate commerce for immoral purposes. The wife was required to testify over both her own and the defendant's objections. The court held, although with three justices dissenting, that she was properly required to testify, even though she was not married to the defendant until after the criminal act took place.

''All states have established by statute the testimonial status of husband and wife in actions to which one is a party. These statutes vary considerably, ranging from almost full adoption of the common-law rule on the one hand to its total abolition on the other.'' (''The Marital 'For and Against' Privilege in California,'' *supra*, 8 Stanford L. Rev., p. 423.) No state has given the injured spouse in a criminal action brought against the other for injury to the former the right to refuse to testify. In California, in 1866, a statute was enacted making the injured spouse a competent witness in a criminal action involving ''personal violence'' by one spouse against the other. With the adoption of the codes in 1872, this rule was carried into section 1881, subdivision 1, Code of Civil Procedure, and section 1322, Penal Code.[2]

In *People* v. *Tidwell*, *supra*, 61 Cal.App.2d 61, the court pointed out that prior to its amendment in 1911, section 1322, Penal Code, provided that the exception to a husband or wife not testifying in a criminal case was limited to '' '. . . cases of criminal violence upon one by the other.' '' But the amendment of 1911 changed that part of the section to read '' '. . . or in case of criminal actions or proceedings for a crime committed by one against the person or property of the other,

---

[2]*People* v. *Langtree* (1883), 64 Cal. 256, 259 [30 P. 813], states concerning the two sections: ''We think upon a fair construction both mean the same thing, although the Penal Code is more explicit than the other.'' Both *Langtree* and *In re Kellogg*, *supra*, 41 Cal.App.2d 833, 838, hold that if there is any inconsistency between the sections as applied in criminal actions, section 1322 controls.

or in cases of criminal violence upon one by the other . . .' "
The court then said: "The amendment of 1911, in our opinion, shows the intention of the Legislature to broaden the exceptions so that one spouse may testify against the other in cases other than those involving criminal violence." In view of that evident intent of the Legislature, we see no reason to act contrary to that intent, and interpret the section narrowly as defendant would have us do, particularly in that to do so would require us to read into the section language which is not there. There is no language in either section (nor in any cases dealing with those sections) which indicates that the witness spouse may assert a privilege not to testify against the party spouse in the excepted situations.

The whole concept of marital privilege, immunity or competency has been the subject of almost violent criticism by Wigmore (see 8 Wigmore on Evidence, § 2227 et seq.) and is also damned by most modern writers (see McCormick on Evidence, §§ 61-68, pp. 139-149; Hines, *"Privileged Testimony of Husband and Wife in California,"* 19 Cal. L. Rev. 390, 408, f.n. 149; notes, 38 Virginia L. Rev. 359, 375; *"The Marital 'For and Against' Privilege in California,"* supra, 8 Stanford L. Rev. 420).

The purposes of the privilege, preservation of marital harmony, the repugnance of making one spouse an instrument in the condemnation of the other, the danger of perjury and the encouragement of free communication, have been more and more considered obstructive and sentimental (see 8 Wigmore on Evidence, *supra*, § 2227 et seq.).

As early as 1883 it was said in California: " 'On the whole . . . the prevailing tendency of late years in both England and America is to regard domestic confidence or the ties of a spouse as of little consequence compared with the public convenience of extending the means of ascertaining the truth in all cases; such facilities being increased, it is believed, by hearing what each one has to say, and then making due allowance for circumstances affecting each one's credibility.' [Citation.]" (*People* v. *Langtree, supra,* 64 Cal. 256, 259.)

It would seem that there could be but little purpose in allowing the existence of a marital privilege when none exists in the statutes. Rather, the interests of the public in suppressing crimes of violence are paramount to the nebulous benefits of marital peace where such peace, after violence, is doubtful.

*Hawkins* v. *United States* (1958), 358 U.S. 74 [79 S.Ct. 136, 3 L.Ed.2d 125], a case in which it was held error to permit the wife to testify against her husband who was charged with violation of the Mann Act by transporting a girl from Arkansas to Oklahoma for immoral purposes, is not in point, as the case was not one involving a prosecution of one spouse for a crime committed against the other.

It is not clear from the petition whether petitioner seriously contends that the corpus delicti was not shown other than by defendant's admission to the police officer at the scene of the shooting. If so, there is no basis for such contention. ▮ The corpus delicti does not require proof of the identity of the perpetrator, nor that any crime was committed by the defendant. (*People* v. *Cobb* (1955), 45 Cal.2d 158, 161 [287 P.2d 752].) ▮ Only a prima facie showing is necessary; the evidence need not be sufficient to establish guilt. (*People* v. *Amaya* (1952), 40 Cal.2d 70, 76 [251 P.2d 324].) ▮ Here there was ample evidence to constitute a prima facie showing of both the corpus delicti and probability of guilt. The husband's testimony, although evasive, equivocal and intended to cover up the true facts, clearly established the corpus delicti without defendant's statements to the police officer that she shot her husband because of his misconduct. Even though Jeremiah tried to make the shooting appear accidental (he did not succeed too well at that!) the corpus delicti was proved by the fact that he was shot twice by an angry defendant.

The alternative writ of prohibition is discharged and the petition denied.

Tobriner, J., and Duniway, J., concurred.