THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SANTOS MATOS RODRÍGUEZ, Defendant and Appellant.

No. 16901. Decided August 18, 1961.

324

*Yamil Galib Frangie* for appellant. *J. B. Fernández Badillo, Attorney General,* and *Juan A. Faría, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The appellant while being married to another woman had sexual relations with a girl less than 14 years of age. Before the information was filed he obtained his divorce and married the prosecutrix when she was already

14 years of age,[1] upon acquiring the consent of the girl's parents. Notwithstanding the marriage they have not lived together. Is the testimony of the prosecutrix, defendant's wife, admissible in the action filed against him for statutory rape? The trial court admitted the testimony and the appellant assigns this admission as reversible error.

Section 40 of the Law of Evidence, 32 L.P.R.A. § 1734, establishes the following as to the admission of the testimony of one spouse against the other.

"A person can not be examined as a witness in the following cases:

"1. A husband can not be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this provision does not apply to a civil action or proceeding by one against the other, *nor to a criminal action or proceeding for a crime*[2] *committed by one against the other.*" (Italics ours.)

This statutory provision incorporates into our statutes the doctrine developed in the jurisdictions where the common law concerning the matter now before us prevails. *The Effect of Marriage on the Rules of the Criminal Law,* 61 Col. L. Rev. 73 (1961). At common law in the first years of the development of the doctrine, the prohibition was absolute. Note, 9 Kan. L. Rev. 466 (1961); 8 Wigmore, Evidence § 2227 (3d ed. 1940); 3 Jones, Evidence § 798 (5th ed. 1958); 2 Underhill, Criminal Evidence § 342 (5th ed. 1956); 3 Wharton, Criminal Evidence § 764 (12th ed. 1955). With the lapse of time some exceptions were established and different reasons were advanced in support of the rule of inadmissibility. *Hawkins* v. *United States,* 358 U.S. 74, 79 Sup. Ct. 136, 3 L.Ed.2d 125 (1958); *Young* v. *Superior Court,* 12 Cal.

---

[1] The marriage of a minor 16 years of age is not void, but merely voidable. *Fernández* v. *García,* 75 P.R.R. 443 (1953).

[2] In *People* v. *Correa,* 34 P.R.R. 843 (1926) it was held that the English text in which the adjective "felonious" does not appear prevailed.

Rptr. 331 (1961); *The Marital For or Against Privilege in California,* 8 Stan. L. Rev. 420 (1956). Note, 38 Va. L. Rev. 359 (1952).

Wigmore bitterly criticizes the doctrine of inadmissibility and analyses all the reasons that have more than once been advanced in support thereof reaching the conclusion that they all lack merit. 8 Wigmore, Evidence §§ 2227, 2228 (3d ed. 1940). As Wigmore, other authorities criticize it. Note, 2 Cal. L. Rev. 148 (1914); Hines, *Privileged Testimony of Husband and Wife in California,* 19 Cal. L. Rev. 390 (1931); Hutchins and Slesinger, *Some Observations on the Law of Evidence: Family Relations,* 13 Minn. L. Rev. 675 (1929).[3]

Among the exceptions incorporated to the rule which establishes the admissibility of the testimony of one spouse against the other there is one to the effect that said testimony is admissible in a criminal prosecution against one of the spouses for a crime committed against the other. As we have seen, this exception is incorporated in § 40 of the Law of Evidence hereinbefore quoted. Wigmore points out that the exception finds its origin in 1631 when the testimony of the wife was admitted against her husband in a case of rape upon her instigated by him. 8 Wigmore, Evidence at 223, n. 9 citing the case of *Lord Audley's Trial,* 3 How. St. Tr. 401 (1631).

The reason most frequently advanced in support of the rule is that it is intended to preserve the marriage. *People v. Medina,* 32 P.R.R. 140 (1923); Sulzberger Jr., *Privilege Against Compelled Adverse Testimony By a Spouse,* 18 Wash. & Lee L. Rev. 98 (1961); 8 Wigmore, Evidence § 2227 (3d ed. 1940). It is adduced that there is a predominant interest on the part of the state to preserve domestic peace and the mutual confidence between the spouses. It is maintained

---

[3] But see the dissenting opinion in *Wyatt* v. *United States,* 362 U.S. 525, 80 Sup. Ct. 901, 4 L. Ed.2d 931 (1960) where a defense is made of the rule of inadmissibility and the position assumed by Wigmore is criticized.

that if one of the spouses were permitted to testify against the other, marital harmony could hardly be restored. *Hawkins* v. *United States, supra.* The strictness of the rule brought about the practice that a spouse was permitted to abuse the other with impunity. This gave rise to the exception to which we have referred: of permitting the testimony when one of the spouses is accused of a crime against the other. The rule is known as the rule of "necessity." *People* v. *Correa,* 34 P.R.R. 843, 848 (1926); *United States* v. *Mitchell,* 137 F.2d 1006 (2d Cir. 1902); *Young* v. *Superior Court, supra,* 49 Geo. Wash.L.Rev. 148 (6th ed. 1960); Note, 39 Texas L.Rev. 508, 510 (1961). In the dissenting opinion in *Wyatt* v. *United States,* 362 U.S. 525, 4 L.Ed.2d 931 (1960), the case of *Bentley* v. *Cooke,* 3 Doug. 422, 424 (1784) is cited to the effect that "[T]hat necessity is not a general necessity, as where no other witness can be had, but a particular necessity, as where, for instance, the wife would otherwise be exposed without remedy to personal injury."

The exception to the rule having been established in our statute it would seem clear that in a case such as the one at bar the testimony of the wife is admissible as decided by the trial court.

But appellant points out that § 40 of our Law of Evidence was adopted from the state of California and corresponds to § 1881 [4] of the Code of Civil Procedure of that state and already in 1902 the Supreme Court of California, before said section was incorporated into our code, had construed it

---

[4] Said section at the time we adopted it read as follows:

"Art. 1881. There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases:

"1. A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this provision does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

in a case where the facts were similar to the present case, in the sense that the testimony of the victim was inadmissible. He refers to the case of *People* v. *Curiale*, 137 Cal. 534, 70 Pac. 468 (1902). The reason adduced by the California court upon reaching the conclusion that the testimony of the prosecutrix was inadmissible was that the exception to the rule of inadmissibility of the testimony of one spouse against the other in a criminal case referred to offenses committed by one spouse against the other and since the prosecutrix was not the wife of the defendant when the events which gave rise to the information took place, it did not fall within the exception established in the statute, her testimony being therefore inadmissible.[5]

█ Appellant then maintains that since the provision in question was construed in California in the sense that the testimony of the wife was not admissible, that construction is binding on us. In support of his theory he invokes the rule that when a statute of another jurisdiction is adopted it is presumed to be adopted with the same interpretation given to the statute by the courts of the state of origin. He cites *Legarreta* v. *Treasurer*, 55 P.R.R. 20 (1939) and *Vázquez* v. *Font*, 53 P.R.R. 252 (1938). And that is the general rule. But already in *People* v. *Ramos*, 18 P.R.R. 954, 962 (1912), we held that "the rule requiring courts to follow the construction put upon a statute by the Supreme Court of the State from which the legislature may have borrowed it is a general rule and is not of universal application but is subject to many exceptions and limitations."

Now, the truth is that there existed in California at the time § 40 of the Law of Evidence was adopted two different provisions concerning the admissibility of the testimony of one spouse against the other. One, § 1881 of the California Code of Civil Procedure which was the one adopted by our

---

[5] Same interpretation has been given to similar statutes by a majority of the United States courts. Annotations 76 A.L.R. 1088 and 11 A.L.R.2d 646, 649, 662.

Legislative Assembly in 1905. The other, § 1322[6] of the Penal Code which was the provision considered and construed by the California Supreme Court in *People* v. *Curiale, supra.* Thus, when our Legislature adopted § 1881 of the California Code of Civil Procedure as § 40 of our Law of Evidence there did not exist in California any decision interpreting its provisions as alleged by appellant. And although both sections treat on the same matter, their language is different and they appear in separate legal bodies, for which reason it may not be inferred that our Legislative Assembly in 1905, when it considered the Law of Evidence, knew of the provision of the California Penal Code, nor of the interpretation given to it by the Supreme Court of that state.

██ In view of these circumstances, in addition to what we have said with respect to the rule invoked by appellant in *People* v. *Ramos,* this Court is in a position to adopt that interpretation which it deems to be most fair and reasonable. *Cf. Belaval* v. *Secretary of the Treasury, ante,* p. 244. The interpretation suggested by the appellant does not seem to us to be the most reasonable nor the most in harmony with the criticisms made, almost unanimously by all the authorities, to the rule that the testimony of one spouse against the other is inadmissible. Referring to the interpretation which appellant suggests Wigmore says that "To hold that the offence, when committed, was not done to the wife, so as to be a 'crime against the other,' is to misread the statute. The woman's consent to marriage cannot remove the crime,

---

[6] Said section provided in 1905 as follows:

"Art. 1322. Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties."

In *Young* v. *Superior Court,* 12 Cal. Rptr. 331 (1961) the case of *People* v. *Langtree,* 64 Cal. 256, 30 Pac. 813 (1883) is cited to the effect that § 1881 of the California Code of Civil Procedure and § 1322 of the Penal Code provide the same thing even though the Penal Code is more explicit.

however much it may discredit her testimony." 8 Wigmore, Evidence, n. 10 at 256.

It is fitting to indicate here that California amended the provisions of § 1322 of the Penal Code,[7] which was the provision construed in *People* v. *Curiale, supra,* in the sense of establishing the admissibility of the testimony in cases such as the present one. Thus, this Court is in a position, upon construing ours for the first time, to adopt such interpretation as seems most fair and reasonable to us. Since it is susceptible of being construed in the sense of permitting the testimony of the spouse when the acts against the other occurred prior to the marriage and this interpretation being in harmony with the development of the rule under consideration, it seems logical and reasonable that following Wigmore's contention we determine that the acts committed prior to the marriage fall within the exception provided by § 40 of the Law of Evidence.

In the *Wyatt* case the United States Supreme Court confronted the problem under discussion in a violation of the White-Slave Traffic Act. The offense charged against the husband was committed, as in the case at bar, prior to the marriage. The admissibility of the wife's testimony was upheld, although the judgment was confined to violations of the Mann Act, 18 U.S.C. § 2421, leaving the question open for discussion whenever it should arise in connection with other offenses. See also: *United States* v. *Williams,* 55 F. Supp. 375 (D.C. Minn. 1944).

---

[7] After the amendment of 1933 it reads thus:

"Art. 1322. Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both, or in case of criminal actions or proceedings for a crime committed by one against the person or property of the other, whether before or after marriage or in cases of criminal violence upon one by the other, or upon the child or children of one by the other or in cases of criminal actions or proceedings for bigamy, or adultery, or in cases of criminal actions or proceedings brought under the provisions of section [s] 270 and 270a of this code or under any provisions of the 'Juvenile Court Law'."

■ Furthermore, in this case the obvious purpose of the appellant in marrying the prosecutrix was to prevent her from giving testimony against him. The tactics, occasionally used, of marrying a potential witness against the other spouse to prevent her from testifying against him is one that should not be sanctioned by the courts. The rule establishing the inadmissibility of the testimony of one spouse aginst the other has deeper philosophical roots and although it has been criticized, the lapse of time has given it respectability. For that reason the protection of such a rule can not be permitted to be invoked where the marriage was contracted for the sole purpose of taking advantage of its provisions. In the very case of Curiale, invoked by appellant, the court stated at page 470 that the result would have been different if the prosecutrix had not been living with the defendant. See: 70 Harvard L.Rev. 160, 162, n. 411 (1960); Note, 33 Tul. L. Rev. 884, 891, n. 64 (1959); Bonner, *Evidence: Marital Privilege in Criminal Cases*, 13 Okla. L. Rev. 448 (1960); 24 Calif. L. Rev. 472 (1936); Annotations 97 L. Ed. 615 and 3 L. Ed. 2d 1607, 1611. *Cf. Lutwak* v. *United States*, 344 U.S. 604, 613 (1953); *Pereira* v. *United States*, 202 F.2d 380 (5th Cir. 1953) and *United States* v. *Graham*, 87 F. Supp. 237 (Ed. Mich. 1949).

In the case of *United States* v. *Graham, supra,* the defendant appropriated to himself an amount of money belonging to a woman to whom he was making love at the same time that he was swindling her. He ended by marrying her but two weeks later deserted her. When at the hearing the wife was called to testify against him the defendant objected relying on the known rule. In ruling against him the court stated at page 241:

"Nor ought this view to be outweighed by a consideration of the basic reason for the common-law rule for the exclusion of the wife's testimony, namely, the preservation of domestic tranquility and happiness. We have here but the formalities of a

marriage which was nothing but a mask and device to cover the fraud which the husband perpetrated upon his wife. When the defendant fraudulently obtained her property and then promptly deserted her, he destroyed the very basis for the rule by his own actions, and the court should penetrate the fiction that there was any marital status to preserve."

■ Appellant assigns as error the admission in evidence of his confession given before the prosecuting attorney. He maintains that it was not voluntary because he gave it "under the tacit promise that upon marrying the alleged prosecutrix no information would be filed against him." Supposing that a promise in that sense would constitute the coercion that divests a confession of its voluntary character, the truth is that we find nothing in the evidence, which was first brought before the court and then before the jury to determine the voluntariness of the confession, that may be interpreted in the sense that such a promise was made to the defendant. But the evidence shows that when the defendant went to the office of the prosecuting attorney and made his statement admitting the facts, he had already commenced the divorce proceeding against his first wife and asked the prosecuting attorney whether his marriage to the prosecutrix would avoid his prosecution. The prosecuting attorney at no time promised not to prosecute him if he married. There is nothing that may be interpreted in the sense that the confession made by the defendant on the first day was instigated by the fact that the prosecuting attorney told him, even vaguely, that marriage would prevent his prosecution.

■■ Appellant assigns in his brief two additional errors which do not merit discussion in view of our ruling on the first two. Now, at the hearing of the case the defendant raised a question which he argues in a supplementary brief filed with leave of the court and in his reply to the brief of the prosecuting attorney. Defendant alleges that the trial judge in making a summary of the evidence told the jury, upon referring to the testimony of the victim's mother, that

she had testified that "on July 2, 1958 the girl returned to her home; [and] had told her what happened." Appellant then contends that in charging the jury, the judge stated that the prosecutrix's statements to third persons are sufficient corroboration to her testimony. Appellant finally maintains that notwithstanding the fact that the statements of the prosecutrix to her mother were not admitted in evidence, the jury was able to consider as evidence of corroboration the statements made by the prosecutrix to her mother in view of the reference made by the judge to such statements when making the summary of the evidence.

It should be noted that when the judge finished instructing the jury he asked the parties whether they wanted to enter any exception to the instructions given and the prosecuting attorney as well as counsel for the defendant answered in the negative. It would have been very easy for the defendant, if he believed that the judge had committed an error in charging the jury, to request its correction. As we have seen, nothing was done. This would be sufficient to dispose of the question raised, *People* v. *Alsina*, 79 P.R.R. 44 (1956), but as a matter of fact the error assigned was not committed. The judge made a summary of the evidence and he did so most accurately. The mother testified that her daughter told her everything that had happened with the defendant. If we examine the evidence we find that counsel objected to the witness saying what her daughter had told her because "such a conversation would be hearsay evidence," and that when she tried to explain what happened to her daughter, counsel again objected and the judge sustained him and stated that "the court rules that the witness may not explain the content of what she spoke with her daughter until it is established when, where and under what circumstances the statements were made in order to decide whether or not they are admissible in evidence." The prosecuting attorney then ceased his examination and made no more questions to the witness. The part of the instructions to which appellant

objects deals with general principles of law and the judge explains to the jury that in order to admit statements made by the prosecutrix to a third person (in this case her mother) as evidence of corroboration it is first necessary to establish certain requirements which he explains and which are the same ones he stated when he sustained defendant's objection. In view of what happened at the trial, what evidence of corroboration based on what the prosecutrix told her mother could have been considered by the jury? Clearly none, since the defendant objected to the testimony of the mother to that effect and the judge, as we have seen, sustained him.

Since none of the errors assigned has been committed the judgment appealed from will be affirmed.