EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SANTOS MATOS RODRÍGUEZ, acusado y apelante.

*Número:* 16901.   *Resuelto:* 18 de agosto de 1961.

*Yamil Galib Frangie,* abogado del apelante; *J. B. Fernández Badillo, Procurador General* y *Juan A. Faría, Procurador General Auxiliar,* abogados del apelado.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante siendo casado sostuvo relaciones sexuales con una niña menor de 14 años. Antes de radicarse acusación, se divorció y contrajo nupcias con la perjudicada, cuando ya ésta había cumplido 14 años[1] mediando para ello el consentimiento de los padres de la joven. A pesar del ma-

---

[1] El matrimonio de una menor de 16 años no es nulo, es meramente anulable. *Fernández* v. *García,* 75 D.P.R. 472 (1953).

trimonio no han vivido juntos. ¿Es admisible el testimonio de la perjudicada, esposa del acusado, en el caso seguido contra éste por violación técnica? El tribunal de instancia admitió el testimonio y el apelante lo señala como error que conlleva la revocación de la sentencia.

Establece el artículo 40 de la Ley de Evidencia, 32 L.P.R.A. sec. 1734, lo siguiente en cuanto a la admisibilidad del testimonio de un cónyuge en contra del otro:

"No se podrá examinar a una persona como testigo en los casos siguientes:

"1. Un marido no podrá ser examinado a favor ni en contra de su mujer, sin el consentimiento de ésta; ni una mujer a favor ni en contra de su marido, sin el consentimiento de éste; ni podrá ninguno de los dos durante o después del matrimonio, ser examinado sin consentimiento del otro, respecto a alguna comunicación habida de parte a parte, durante el matrimonio; pero esta disposición no será aplicable a una acción o procedimiento civil por uno de los cónyuges contra el otro *ni a una acción o procedimiento criminal por un delito grave*([2]) *cometido por uno de ellos contra el otro.*" (Énfasis suplido.)

Esta disposición estatutaria incorpora a nuestro derecho la doctrina desarrollada en las jurisdicciones donde impera el derecho común relacionada con la materia que ahora consideramos. *The Effect of Marriage on the Rules of the Criminal Law*, 61 Colum. L. Rev. 73 (1961). En el derecho común, en los primeros años del desarrollo de la regla, la prohibición era absoluta. Nota, 9 Kan. L. Rev. 466 (1961); 8 Wigmore, Evidence, sec. 2227 (3ra. ed. 1940); 3 Jones, Evidence, sec. 798 (5ta. ed. 1958); 2 Underhill, *Criminal Evidence*, sec. 342 (5ta. ed. 1956); 3 Wharton, *Criminal Evidence*, sec. 764 (12fth. ed. 1955). Con el correr del tiempo se establecieron excepciones y se propusieron diversas razones para sostener el criterio de la inadmisibilidad. *Hawkins* v. *United States*, 358 U. S. 74, 79 Sup. Ct. 136, 3 L. Ed.2d 125 (1958); *Young*

---

([2]) En *Pueblo* v. *Correa*, 34 D.P.R. 884 (1926) se resolvió que debía prevalecer el texto inglés en el que no aparecía la calificación de "grave".

v. *Superior Court,* 12 Cal. Rptr. 331 (1961) ; *The Marital For or Against Privilege in California,* 8 Stan. L. Rev. 420 (1956). Nota, 38 Va. L. Rev. 359 (1952).

Wigmore critica acerbamente la doctrina de la inadmisibilidad, analizando todas las razones que se han expuesto una y otra vez para sostenerla y llega a la conclusión de que todas carecen de mérito. 8 Wigmore, *Evidence,* secs. 2227, 2228 (3rd ed. 1940). Al igual que Wigmore otras autoridades la critican. Nota, 2 Calif. L. Rev. 148 (1914) ; Hines, *Privileged Testimony of Husband and Wife in California,* 19 Cal. L. Rev. 390 (1931) ; Hutchins and Stesinger, *Some Observations on the Law of Evidence:* Family Relations, 13 Minn. L. Rev. 675 (1929).[3]

Entre las excepciones que se incorporan a la regla que establece la admisibilidad del testimonio de un cónyuge en contra del otro, está la de que es admisible en un caso criminal seguido contra uno de los cónyuges por un delito cometido en contra del otro. Esta excepción ya hemos visto está incorporada en el artículo 40 de la Ley de Evidencia antes transcrito. Wigmore apunta que la excepción se remonta al año 1631 cuando se admitió el testimonio de la esposa contra su marido en un caso de violación en el cual ella era la víctima y que fue instigada por el esposo. 8 Wigmore, *Evidence,* pág. 223, escolio 9 citando el caso de *Lord Audley's Trial,* 3 How. St. Tr. 401 (1631).

La razón que con más frecuencia se expone para sostener la regla es que con ella se preserva el matrimonio. *El Pueblo* v. *Medina,* 32 D.P.R. 151 (1923) ; Sulzberger Jr., *Privilege Against Compelled Adverse Testimony By a Spouse,* 18 Wash. & Lee L. Rev. 98 (1961) ; 8 Wigmore, *Evidence,* sec. 2227 (3ra. ed. 1940). Se aduce que hay un interés predominante por parte del estado en preservar la paz del hogar y la mutua

---

[3] Pero véase la opinión disidente en *Wyatt* v. *United States,* 362 U. S. 525, 80 Sup. Ct. 901, 4 L. Ed.2d 931 (1960) donde se hace una defensa de la regla de la no admisibilidad y se critica la posición asumida por Wigmore.

confianza entre los esposos. Se sostiene que de permitirse a uno de los esposos declarar en contra del otro mal podría posteriormente restituirse la paz conyugal. *Hawkins* v. *United States*, supra. Lo rígido de la regla trajo como consecuencia que en la práctica el efecto era permitir que un cónyuge atropellara al otro impunemente. Surgió entonces la excepción a que hemos hecho referencia: la de permitir el testimonio, cuando se acusa a uno de los esposos de cometer un delito en contra del otro. Se conoce como la regla de la "necesidad". *Pueblo* v. *Correa*, 34 D.P.R. 884, 890 (1926); *United States* v. *Mitchell*, 137 F.2d 1006 (2d Cir. 1902); *Young* v. *Superior Court*, supra; Geo. Wash. L. Rev. 148 (1960); Nota, 39 Texas L. Rev. 508, 510 (1961). En la opinión disidente en *Wyatt* v. *United States*, 362 U. S. 525, 4 L. Ed.2d 931 (1960), se cita del caso de *Bentley* v. *Cooke*, 3 Doug. 422, 424 (1784) al efecto de que "[e]sa necesidad no es una de carácter general, como cuando no se puede obtener ningún otro testigo, pero sí de carácter particular como cuando, por ejemplo, la mujer se vería de otra manera expuesta sin remedio a daños personales".

Estableciéndose en nuestro estatuto la excepción a la regla, parecería claro que en un caso como el de autos el testimonio de la esposa es admisible tal y como lo resolvió el tribunal de instancia.

Pero, el apelante señala que el artículo 40 de la Ley de Evidencia arriba citado, proviene del estado de California y corresponde al artículo 1881 (⁴) del Código de Enjuiciamiento

---

(¹) Leía así dicho artículo cuando lo adoptamos:

"Art. 1881. There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person cannot be examined as a witness in the following cases:

"1. A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this provision does not apply to a civil action or proceeding by one against; the other, nor to a criminal action or proceeding for a crime committed by one against the other;"

Civil de aquel estado, y ya la Corte Suprema de California en el año 1902, antes de ser incorporado a nuestro cuerpo legal, en un caso de hechos similares a los del de autos, lo había interpretado en el sentido de que el testimonio de la perjudicada era inadmisible.   Se refiere al caso de *People* v. *Curiale*, 137 Cal. 534, 70 Pac. 468 (1902).   La razón que se adujo por el tribunal de California para llegar a la conclusión de que el testimonio de la perjudicada no era admisible fue que la excepción a la regla de la no admisibilidad del testimonio de un cónyuge en contra del otro en un caso criminal, se refería a delitos cometidos por un esposo contra el otro y como la perjudicada no era esposa del acusado cuando sucedieron los hechos que dieron base a la acusación, no caía dentro de la excepción establecida en el estatuto, siendo por tanto inadmisible su testimonio. (5)

■ Sostiene entonces el apelante que como en California se había interpretado la disposición que nos ocupa estableciéndose que no era admisible el testimonio de la esposa, esa interpretación es obligatoria para nosotros.   En apoyo de su tesis invoca la regla al efecto de que al adoptarse un estatuto de otra jurisdicción se presume que se hace con la interpretación que al estatuto le había dado las cortes del estado de origen. Nos cita *Lagarreta* v. *Tesorero*, 55 D.P.R. 22 (1939) y *Vázquez* v. *Font*, 53 D.P.R. 265 (1938).   Y esa es la regla general.   Pero ya en *Pueblo* v. *Ramos*, 18 D.P.R. 993, 1001 (1912), sostuvimos que "la regla que exige que las cortes adopten la interpretación que se le ha dado a otro estatuto por la Corte Suprema del cual ha podido ser tomado por la Legislatura, es una regla general y no es de aplicación universal sino que está sujeta a muchas excepciones y limitaciones".

Ahora, la realidad es que en California existían a la fecha en que se adoptó el artículo 40 de la Ley de Evidencia dos disposiciones distintas sobre la admisibilidad del testimonio de un

---

(5) Igual interpretación le han dado a estatutos similares la mayoría de los tribunales en los Estados Unidos.   Anotaciones 76 A.L.R. 1088 y 11 A.L.R.2d 646, 649 y 662.

cónyuge en contra del otro.  Una, el artículo 1881 del Código de Enjuiciamiento Civil de California, que fue la que adoptó nuestra Asamblea Legislativa en el 1905.  Otra, el artículo 1322 (⁶) del Código Penal que fue la disposición que consideró e interpretó la Corte Suprema de California en *People* v. *Curiale*, supra.  Así, cuando nuestros legisladores incorporaron el artículo 1881 del Código de Enjuiciamiento Civil de California como el 40 de nuestra Ley de Evidencia no existía decisión alguna en California interpretando sus disposiciones en la forma que sostiene el apelante.  Y aunque ambos artículos tratan sobre la misma materia, su redacción es distinta y aparecen en cuerpos legales separados, por lo cual no podría inferirse que nuestra Asamblea Legislativa en el 1905 cuando consideró la Ley de Evidencia, conocía la disposición que aparecía en el Código Penal de California, así como la interpretación que le había dado la Corte Suprema de aquel estado.

Existiendo las circunstancias apuntadas, además de lo expuesto en cuanto a la regla invocada por el apelante en *Pueblo* v. *Ramos*, este Tribunal está en posición de adoptar aquella interpretación que entienda es más justa y razonable. Cf. *Belaval* v. *Srio. de Hacienda*, 83 D.P.R. 251 (1961).  La interpretación que propone el apelante no parece ser la más razonable ni la más en armonía con las críticas que se hacen por la casi unanimidad de las autoridades a la regla que hace inadmisible el testimonio de un cónyuge en contra del otro. Wigmore al enjuiciar la interpretación que nos propone el apelante ha dicho que "sostener que el delito, cuando se cometió, no fue contra la esposa, de tal suerte que se considere 'un delito del uno contra el otro' es malinterpretar el estatuto.  El

---

(⁶) Disponía así dicho artículo en el 1905:

"Art. 1322.  Except with the consent of both, or in cases of criminal violence upon one by the other, neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties."

En *Young* v. *Superior Court*, 12 Cal. Rptr. 331 (1961) se cita a *People* v. *Lontree*, 64 Cal. 256, 30 Pac. 813 (1883) al efecto de que el artículo 1881 del Código de Enjuiciamiento Civil de California y el artículo 1322 del Código Penal, disponen lo mismo aunque el del Código Penal es más explícito.

hecho de que la mujer consienta al matrimonio no puede borrar el delito, no importa cuánto esto pueda afectar su credibilidad." 8 Wigmore, *Evidence*, escolio 10, pág. 256.

Es pertinente señalar que California enmendó las disposiciones del artículo 1322 del Código Penal,([7]) que fue la disposición interpretada en *People* v. *Curiale*, supra, en el sentido de establecer la admisibilidad del testimonio en situaciones como la que aquí consideramos. Así este tribunal está en posición al interpretar la nuestra por primera vez, de adoptar aquella interpretación que nos parezca más justa y razonable. Siendo susceptible de interpretarse en el sentido de permitir el testimonio del cónyuge cuando los actos contra el otro ocurrieron antes del matrimonio y estando esta interpretación en consonancia con el desarrollo que ha tenido la doctrina que estudiamos, parece lógico y razonable que siguiendo lo sostenido por Wigmore, determinemos que los actos cometidos antes del matrimonio están incluidos en la excepción establecida en el artículo 40 de la Ley de Evidencia.

La Corte Suprema de los Estados Unidos en el caso de *Wyatt* arriba citado se confrontó con el problema que discutimos en un caso de trata de blancas. Los hechos por los cuales se acusó al marido fueron cometidos al igual que en el de autos antes del matrimonio. Se sostuvo la admisibilidad del testimonio de la esposa aunque el fallo se circunscribió a violaciones del Mann Act, 18 U.S.C. sec. 2421, dejándose la cuestión abierta para ser discutida cuando surgiera en relación con otros delitos. Véase además: *United States* v. *Williams*, 55 F. Supp. 375 (D. C. Minn. 1944).

---

([7]) Después de la enmienda de 1933 lee así:

"Art. 1322. Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both, or in case of criminal actions or proceedings for a crime committed by one against the person or property of the other, whether before or after marriage or in cases of criminal violence upon one by the other or upon the child or children of one by the other or in cases of criminal action or proceedings for bigamy, or adultery, or in cases of criminal actions or proceedings brought under the provisions of section[s] 270 and 270a of this code or under any provision of the 'Juvenile Court Law'."

■ Además, en este caso el obvio propósito del apelante al casarse con la perjudicada fue impedir que ésta prestara declaración en contra suya. La táctica, usada en ocasiones, de casarse con un testigo potencial en contra del otro contrayente para evitar que pueda declarar en perjuicio suyo, es una que no debe merecer el endoso de los tribunales. La regla que establece la inadmisibilidad del testimonio de un cónyuge en contra del otro tiene hondas raíces filosóficas, y aunque ha sido criticada, la pátina del tiempo le ha dado carácter de respetabilidad. Por eso no puede permitirse que se invoque su protección en aquellos casos en que el matrimonio fue contraído con el solo propósito de beneficiarse de sus disposiciones. En el propio caso de Curiale, invocado por el apelante, la corte manifiesta a la pág. 470 que el resultado hubiese sido distinto si la perjudicada no hubiera estado viviendo con el acusado. Véase: 70 Harv. L. Rev., 160, 162, escolio 411 (1960); Nota, 33 Tul. L. Rev. 884, 891 escolio 64 (1959); Bonner, *Evidence*: *Marital Privilege in Criminal Cases*, 13 Okla. L. Rev. 448 (1960); 24 Calif. L. Rev. 472 (1936), Anotaciones, 97 L. Ed. 615 y 3 L. Ed.2d 1607, 1611. Cf. *Lutwak* v. *United States,* 344 U. S. 604, 613 (1953); *Pereira* v. *United States,* 202 F.2d 380 (5th. Cir. 1953) y *United States* v. *Graham,* 87 F.Supp. 237 (Ed. Mich. 1949).

En el caso de *United States* v. *Graham,* supra, el acusado se apoderó de una cantidad de dinero perteneciente a una mujer a la cual enamoraba al mismo tiempo que la estafaba. Terminó casándose con ella pero a las dos semanas la abandonó. Cuando en la vista del caso se presentó a la esposa como testigo el acusado objetó invocando la conocida regla. Al resolverle en contra la corte se expresó así a la página 241:

"Tampoco debe este punto de vista rechazarse por motivo del fundamento básico en que descansa la regla del derecho común que excluye el testimonio de la esposa, o sea, la conservación de la paz y felicidad del hogar. Aquí sólo tenemos las formalidades de un matrimonio que es sólo una cortina y un subterfugio para encubrir el fraude cometido por el marido en perjuicio de

su esposa. Cuando el acusado fraudulentamente se apropió los bienes de ella y enseguida la abandonó, destruyó con esta actuación la base esencial que dio vida a dicha regla, y la corte debe destruir el mito de que existía un status marital que proteger y conservar."

■ Señala el apelante como error la admisión en evidencia de su confesión prestada ante el fiscal. Sostiene que no fue voluntaria pues la hizo "bajo la promesa tácita de que al contraer matrimonio con la presunta perjudicada no se radicaría contra él acusación alguna". Suponiendo que una promesa en ese sentido constituyera la coerción que le quita el carácter de voluntaria a una confesión, la realidad es que no encontramos nada en la prueba, que consideró primero el juez y luego el jurado para determinar la voluntariedad de la confesión, que pueda interpretarse como que al acusado se le hizo tal promesa. Lo que surge es que cuando el acusado acudió a la fiscalía y prestó declaración admitiendo los hechos, ya había iniciado el procedimiento para divorciarse de su primera esposa e inquirió del fiscal si al casarse con la perjudicada evitaba que se le procesara. En ningún momento el fiscal le prometió que si se casaba no radicaría acusación contra él. Nada hay que pueda interpretarse en el sentido de que la confesión que hizo el acusado el primer día, fuera instigada por el hecho de que el fiscal la manifestara, aunque fuera vagamente, que el casarse traería como consecuencia la no radicación de la acusación.

■ Señala el apelante dos errores adicionales en su alegato que en vista de lo resuelto al considerar los dos primeros no ameritan su discusión. Ahora, durante la vista del caso el acusado levantó una cuestión que discute en alegato complementario radicado con permiso del tribunal y en uno de réplica al radicado por el fiscal. Alega el acusado que el juez de instancia al hacer una relación de la prueba desfilada le manifestó a los señores del jurado, refiriéndose al testimonio de la madre de la perjudicada, que ésta había declarado que "el día 2 de julio de 1958 regresó la niña a su casa; [y] que le

había relatado lo que le había sucedido". Pasa entonces el apelante a sostener que al instruir al jurado, el juez manifestó que las declaraciones de una perjudicada a terceras personas son suficientes para corroborar su declaración. Sostiene el apelante, finalmente, que a pesar de que las manifestaciones de la perjudicada a la madre no fueron admitidas en evidencia, el jurado pudo considerar como prueba de corroboración las manifestaciones hechas por la perjudicada a su madre en vista de la alusión que a tales manifestaciones hizo el juez al resumir la prueba.

Es de notarse que al terminar el juez de instruir al jurado preguntó a las partes si querían anotar alguna excepción a las instrucciones trasmitidas y tanto el fiscal como el abogado defensor contestaron en la negativa. Fácil le hubiera sido al acusado, si entendía que el juez había cometido un error al instruir al jurado, solicitar que lo corrigiera. Como hemos visto nada hizo. Esto bastaría para disponer de la cuestión levantada, *Pueblo* v. *Alsina*, 79 D.P.R. 46 (1956), pero la realidad es que no se cometió el error señalado. El juez al resumir la prueba lo hizo con toda precisión. La madre declaró que su hija le relató todo lo que le sucedió con el acusado. Si se examina la prueba encontraremos que el abogado se opuso a que la testigo dijera lo que su hija le había relatado porque "tal conversación sería a prueba de referencia", y que cuando ella trató de explicar lo sucedido con su hija, el abogado vuelve a objetar y el juez lo sostiene manifestando que "el tribunal resuelve que la testigo no explique el contenido de lo que habló con su hija hasta tanto no se establezca cuándo, dónde, y en qué circunstancias hizo el relato, para resolver si el relato es admisible o no en evidencia". El fiscal abandonó entonces el interrogatorio y no hizo más preguntas a la testigo. La parte de las instrucciones que objeta el apelante trata sobre principios generales de derecho y el juez le hace claro al jurado que para que las manifestaciones de la perjudicada a una tercera persona (en este caso a su madre) sean admisibles como prueba de corroboración es necesario establecer ciertos

requisitos que explica y que son los mismos que expuso al sostener la objeción del abogado del acusado. En vista de lo acontecido durante el juicio, ¿qué evidencia de corroboración basada en lo que la perjudicada relató a su madre pudo considerar el jurado? Claramente ninguna, ya que el acusado objetó el testimonio de la madre a ese efecto, y el juez, como hemos visto, lo sostuvo.

*No habiéndose cometido ninguno de los errores señalados procede la confirmación de la sentencia apelada.*