El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
La Fundación Surfrider, Inc. y el Sr. Leon J. Richter presentaron una solicitud de certiorari ante este Tribunal para revisar la sentencia emitida por el Tribunal de Apelaciones. Dicha sentencia confirmó la determinación de la Administración de Reglamentos y Permisos (A.R.Pe.) que aprobó un anteproyecto con variaciones a los regla- *570 mentos de zonificación. Resolvemos que los peticionarios carecen de legitimación para presentar el recurso de revi-sión judicial que instaron ante el Tribunal de Apelaciones.
I
Jennymar Corporation solicitó a A.R.Pe. la aprobación de un anteproyecto para la construcción del desarrollo re-sidencial Marina Los Sueños en un solar ubicado en un distrito de zonificación residencial turístico (RT-0), en la Carretera Estatal 413, Km 1.1, del Barrio Ensenada de Rincón. La agencia celebró vistas públicas en las que los peticionarios, el señor Richter y la Fundación Surfrider, Inc., se opusieron a las variaciones solicitadas para la aprobación del anteproyecto objeto de esta controversia. La parte proponente, Jennymar Corporation, solicitó variacio-nes respecto a altura, densidad poblacional y área bruta de piso. Luego de estas vistas públicas y de la recomendación del oficial examinador, A.R.Pe. aprobó el anteproyecto de manera condicionada y concedió ciertas variacionesp(1) a los reglamentos aplicables. Según surge de la resolución, la autorización del anteproyecto fue condicionada al cumpli-miento de ciertos requisitos. Los peticionarios, el señor Richter y la Fundación Surfrider, Inc., solicitaron la reconsideración. La agencia la denegó y los peticionarios acudieron al Tribunal de Apelaciones.
La Fundación Surfrider alegó que es una entidad cuyos propósitos son la conservación de los océanos y la protec-ción del acceso a las playas. Por su parte, el señor Richter alegó (1) que reside “en el Barrio Ensenada de Rincón, cerca del proyecto objeto del caso de autos”, (2) que actual-mente está afectado por un problema de distribución de agua, (3) que “entiende que este problema se agravará con el aumento de consumo que significa este proyecto”, y (4) *571 “que sus intereses se verán afectados porque este tipo de desarrollo aumenta la densidad poblacional y por lo tanto rompe la armonía y altera las características de su vecindario”. Apéndice, pág. 121. Dicho foro apelativo con-firmó los méritos de la decisión de la agencia administra-tiva y coincidió con la parte recurrida en que “los recurren-tes no presentaron prueba ‘de en qué manera sus intereses quedarán afectados ...’ ”. Apéndice, pág. 166.
Inconformes con esta determinación, los peticionarios presentaron el recurso que nos ocupa en el que señalaron, en síntesis, que erró el Tribunal de Apelaciones al confir-mar la determinación de la agencia de aprobar el antepro-yecto en controversia y permitir las variaciones que se solicitaron. Aunque concedimos término a A.R.Pe. para que se expresara en torno a lo solicitado, la agencia no compa-reció y expedimos el auto el 17 de febrero de 2006. Poste-riormente, todas las partes presentaron sus alegatos. La parte concesionaria, Jennymar Corporation, señaló que los peticionarios carecen de legitimación activa para presentar el recurso de revisión judicial. Con el beneficio de dichas comparecencias y por los fundamentos que expondremos a continuación, resolvemos que los peticionarios no tienen legitimación para presentar el recurso que nos ocupa.
II
 A. Como bien mencionamos en Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715, 720 (1980), el principio de justiciabilidad como autolimitación del ejerci-cio del poder judicial responde en gran medida al papel asignado a la Judicatura en una distribución tripartita de poderes, diseñada para asegurar que no intervendrá en áreas sometidas al criterio de otras ramas de gobierno. Véase, además, Flast v. Cohen, 392 U.S. 83 (1968). Por eso, el poder de revisión judicial sólo puede ejercerse en un asunto que presente un caso o controversia, y no en aque- *572 lias circunstancias en que se presente xana disputa abs-tracta cuya solución no tendrá consecuencias para las partes. Véase E.L.A. v. Aguayo, 80 D.P.R. 552, 558-559 (1958). Esto responde a que “los tribunales existen única-mente para resolver controversias genuinas surgidas entre partes opuestas que tienen un interés real de obtener un remedio que haya de afectar sus relaciones jurídicas”. Id. Véase, además, Hernández Torres v. Gobernador, 129 D.P.R. 824 (1992). De esta forma, nos aseguramos de que el promovente de una acción posea xrn interés en el pleito “de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribxmal las cuestiones en controversia”. Noriega v. Hernández Colón, 135 D.P.R. 406, 427 (1994), ci-tando a Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 413 (1982).
Una de las doctrinas de autolimitación derivadas del principio de “caso o controversia” es la legitimación de la parte que acude ante el foro judicial. En el ámbito del derecho administrativo, cuando un litigante solicita la revisión judicial sobre la constitucionalidad de una acción o decisión administrativa a través de un pleito civil, éste tiene que demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre la acción que se ejercita y el daño alegado, y (4) la causa de acción debe surgir al amparo de la Constitución o de alguna ley. Col. Peritos Elec. v. A.E.E., 150 D.P.R. 327 (2000); Hernández Torres v. Hernández Colón et al., 131 D.P.R. 593, 599 (1992).
Si la parte litigante es una asociación, ésta tiene legitimación para solicitar la intervención judicial por los daños sufridos por la agrupación y para vindicar los derechos de la entidad. Col. Opticos de P.R. v. Vani Visual Center, 124 D.P.R. 559 (1989). Cuando la asociación comparece en defensa de sus intereses, le corresponde demos- *573 trar un daño claro, palpable, real, inmediato, preciso, no abstracto o hipotético a su colectividad. Véanse: Col. Ópticos de P.R. v. Vani Visual Center, supra; Col. Peritos Elec. v. A.E.E., supra. La agrupación también puede acudir al foro judicial a nombre de sus miembros aunque ésta no haya sufrido daños propios. A tales efectos, este Tribunal esta-bleció que cuando la asociación litiga a nombre de sus miembros tiene que demostrar que: (1) el miembro tiene legitimación activa para demandar a nombre propio; (2) los intereses que se pretenden proteger están relacionados con los objetivos de la organización, y (3) la reclamación y el remedio solicitado no requieren la participación individual. Col. Ópticos de P.R. v. Vani Visual Center, supra.
Respecto al requisito del daño que tiene que sufrir la persona natural o jurídica que acude ante el foro judicial, reconocimos que la lesión se puede basar en consideraciones ambientales, recreativas, espirituales o estéticas. Salas Soler v. Srio. de Agricultura, 102 D.RR. 716, 723 (1974). Véase, además, García Oyóla v. J.C.A., 142 D.RR. 532 (1997). A modo ilustrativo, véanse: Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167 (2000); Data Processing Service v. Camp, 397 U.S. 150, 154 (1970). Sin embargo, esto no quiere decir que “la puerta está abierta de par en par para la consideración de cualquier caso que desee incoar cualquier ciudadano en alegada protección de una política pública”. Salas Soler v. Srio de Agricultura, supra, págs. 723-724.
Ahora bien, cuando la intervención judicial surge en el contexto del procedimiento adjudicativo mediante el recurso de revisión judicial, la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2101 et seq., establece los criterios que tiene que demostrar aquél que interese acudir al foro judicial en revisión de la determinación administrativa. El Art. 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley *574 Núm. 201 de 22 de agosto de 2003 (4 L.P.R.A. sec. 24(y)) le confiere competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas. Por su parte, la Sec. 4.6 de la L.P.A.U., 3 L.P.R.A. sec. 2176, esta-blece que el Tribunal de Apelaciones revisará las decisio-nes, órdenes y resoluciones finales de la agencia. Cualquier parte adversamente afectada por la resolución del Tribunal de Apelaciones podrá solicitar la revisión mediante la pre-sentación de un recurso de certiorari ante el Tribunal Supremo. Véase, además, la Sec. 4.7 de la L.P.A.U., 3 L.P.R.A. sec. 2177.
Por lo tanto, toda persona natural o jurídica que cuestione la actuación de la agencia mediante el recurso de revisión judicial tiene que demostrar que goza de legitimación activa a base de las disposiciones de este cuerpo legal.
Como bien afirma el Prof. Demetrio Fernández Quiño-nes, es imperativo que el recurrente satisfaga el requisito de legitimación al presentar el recurso de revisión judicial. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, pág. 500. Añade el profesor Fernández Quiñones que la legitimación necesaria para presentar el recurso de revisión debe distinguirse de la legitimación re-querida para participar en la agencia administrativa y opina que “[e]l hecho de haber participado en el proceso administrativo no le asegura que posea legitimación nece-saria y requerida para la intervención judicial”. Id., pág. 500.
En ese sentido, este Tribunal enfatizó en Junta Dir. Portofino v. P.D.C.M., 173 D.P.R. 455 (2008), que es necesario distinguir al “participante” en el procedimiento administrativo de la “parte” para fines de la revisión judicial. Es decir, no todo el que participa en el procedi- *575 miento administrativo tiene legitimación activa para ser parte en la revisión judicial.
El Prof. Richard J. Pierce, Jr., lo explica así:
The best reasoned opinions, recognize, however, that the law governing standing to participate in an agency proceeding is not identical to the law governing standing to obtain review of an agency proceeding in which the agency takes the action at issue. In Consolidated Edison Co. v. O’Leary, 131 F.3d. 1475 (Fed. Cir. 1997), for instance, the court first held that a party lacked standing to obtain review of an agency decision not to initiate an enforcement action. It then distinguished between standing to obtain review and standing to participate in an agency proceeding:
“The principles underlying the agency’s intervention practices, however, are entirely different from the principles that apply in the present context. The (agency) is free to permit third parties to participate in proceedings before it, for such assistance as those parties may offer, without creating a right in those parties to review a negative decision that the (agency) may ultimately make.” R.J. Pierce, Jr., Administrative Law Treatise, 4ta ed., Nueva York, Aspen Publishers, 2002, Vol. III, Sec. 16.10, págs. 1202-1203.
Conforme con lo anterior, veamos cuáles son los criterios de legitimación que tiene que demostrar aquél que recurre ante el foro judicial mediante el mecanismo de revisión establecido en la Sec. 4.2 de la L.P.A.U., 3 L.RR.A. sec. 2172.
B. Según la Sec. 4.2 de la L.P.A.U., supra, una parte adversamente afectada por una orden o resolución final de una agencia, y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente, tiene legitimación activa para presentar el recurso de revisión. Como vemos, para que el litigante pueda presentar el recurso de revisión judicial tiene que satisfacer dos requisitos: (1) ser parte y (2) estar “adversamente afectado” por la decisión administra-tiva. *576 (2) Además, deberá agotar los remedios administrati-vos y recurrir dentro del término provisto. Nos corres-ponde, entonces, definir ambos conceptos.
Según expone la Sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2102(j), una parte es: (1) “toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción”; (2) la persona “que se le permita intervenir o participar”; (3) la “que haya radicado una petición para la revisión o cumplimiento de una or-den”, (4) “o que sea designada como parte en dicho procedimiento”. Conforme con lo anterior, es parte para efectos de la revisión judicial el promovido o el promovente, esto es, la persona objeto de la acción administrativa. También son partes, para fines de la revisión judicial, aquellas personas naturales o jurídicas a quienes, por haber participado e intervenido en el procedimiento administrativo, la agencia las hizo partes —previa solicitud formal al efecto y debidamente fundamentada— mediante el mecanismo de intervención. Véanse: Sec. 3.5 de la L.P.A.U., 3 L.RR.A. see. 2155; JP, Plaza Santa Isabel v. Cordero Badillo, 177 D.RR. 177 (2009). Respecto al interventor, véase San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374 (2001). Como vemos, el legislador proveyó el mecanismo de intervención para que las personas naturales o jurídicas que tengan un interés legítimo y sustancial que pueda verse adversamente afectado por la actuación de la agencia sean consideradas partes en el procedimiento administrativo con todo lo que ello implica. JP, Plaza Santa Isabel v. Cordero Badillo, supra. Claro está, si la agencia deniega la solicitud de intervención, la parte adversamente afectada por la denegación puede procurar la revisión judicial. *577 Véanse: Secs. 1.3(e) y 3.6 de la L.P.A.U., 3 L.P.R.A. sees. 2102(e) y 2156, respectivamente; JP, Plaza Santa Isabel v. Cordero Badillo, supra.
Una vez resuelto quiénes son “partes” para fines de la revisión judicial, resta definir qué significa estar “adversamente afectada”. Esta frase no está definida en la legislación. Al interpretarla, es meritorio percatarnos que el legislador utilizó el adverbio “adversamente” para cualificar la afectación, por lo que no es suficiente que la actuación gubernamental tenga un efecto sobre el litigante, sino que ese efecto tiene que ser adverso o desfavorable a sus intereses. Al respecto, hemos interpretado el concepto de afectación de un litigante a base de la noción de daño, ya sea económico, estético o recreativo. Véase Salas Soler v. Srio. de Agricultura, supra. Esto dirige el análisis hacia la evaluación de un daño o lesión.
Del historial legislativo se desprende que la aprobación de nuestra ley fue inspirada por la experiencia en Estados Unidos con la Ley de Procedimiento Administrativo federal (Administrative Procedure Act, A.P.A.). Véanse: Informe Conjunto de las Comisiones de Gobierno Estatal, Asuntos Municipales y de lo Jurídico sobre el P. del S. 350, abril de 1987; Pagán Ramos v. F.S.E., 129 D.P.R. 888, 898 (1992). Por tal motivo, nuestra legislación acogió muchas de las doctrinas de la A.P.A. De igual forma, tomó en consideración el desarrollo del derecho administrativo en el foro federal y en los tribunales estatales, así como la experiencia de algunos estados con el Model State Administrative Procedures Act. Véanse: Informe Conjunto, supra; Pagán Ramos v. F.S.E., supra. Así, pues, es meritorio referirnos, de modo ilustrativo, a la interpretación que se le ha dado a nivel estatal y federal a la frase “adversamente afectado” en el contexto del derecho a la revisión judicial de los organismos administrativos. Nos basamos en la norma de hermenéutica que dispone que la adopción de una disposición de ley que proviene de otra jurisdicción *578 hace presumir que también se adoptó la interpretación dada a dicha ley en su lugar de origen. Véanse: Pueblo v. Matos, 83 D.P.R. 335 (1961); Legarreta v. Tesorero de P.R., 55 D.P.R. 22 (1939). Claro, ésta es una regla general y no es de aplicación universal, sino que está sujeta a muchas excepciones y limitaciones. Véase Pueblo v. Matos, supra. Por eso siempre es meritorio evaluar el historial de la apro-bación del estatuto y las realidades a las que se dirige la ley local. Véase Salas Soler v. Srio de Agricultura, supra.
Al interpretar las disposiciones de la A.P.A., el Tribunal Supremo federal manifestó, entre otros asuntos, que el li-tigante que impugna la determinación de la agencia tiene que demostrar que está adversamente afectado o agra-viado (adversely affected or aggrieved), esto es, que sufre o sufrirá una lesión propia y particular (injury in fact) a sus intereses y que su lesión fue causada por la determinación administrativa que se impugna mediante la revisión judicial. Sierra Club v. Morton, 405 U.S. 727 (1972). Así también, en varias jurisdicciones estatales se ha seguido la interpretación federal sobre el análisis de la lesión propia y particularizada (injury in fact). Véase W.A. McGrath y otros, Project: State Judicial Review of Administrative Action, 43 Admin. L. Rev. 571, 637-638 (1991) (“The injury in fact requirement in federal court parallels that utilized by most state courts”).
Esta definición de la frase “adversamente afectado” pro-cura que el litigante que interese solicitar la revisión judicial demuestre que sufre o sufrirá un efecto adverso, un daño o una lesión a sus intereses particulares, de modo que la intervención judicial se dé en el contexto de una contro-versia real con el propósito de dar un remedio a un liti-gante verdaderamente afectado. Véase K.C., Davis, Administrative Law Text, 3ra ed., St. Paul, West Publishing Co., 1972, pág. 429 (“[Limiting the use of courts to those who have an interest at stake does seem entirely reasonable and *579 desirable” (énfasis suplido). Respecto a lo anterior, Davis opina:
A person whose legitímate interest is injured in fact or imminently threatened with injury by governmental action should have standing to challenge that action ....
The main part of the proposal is the same as the test of “adversely affected in fact” under the Administrative Procedure Act ....
A member of the public who is injured in fact should have standing, even though all other members of the public or many of them are injured as he is, and such a member of the public should be allowed to argue for the interest of others, including that of the public. But a person who is not injured in fact by governmental action he seeks to challenge should be denied standing, even if he is trying to represent what he believes to be the public interest. Davis, op.cit., págs. 438-439.
En síntesis, el análisis efectuado en otras jurisdicciones ha concluido, acertadamente, que una parte adversamente afectada es aquella que sufre o sufrirá un daño causado por la actuación administrativa. Véase B. Schwartz, Administrative Law, 3ra ed., Ed. Boston, Little, Brown and Co., 1991, Sec. 8.12, pág. 497 (“Standing exists when plaintiff alleges that he has suffered adverse effect as a result of the challenged agency action-that it has caused him injury, economic or otherwise”).
Luego de considerar el texto de la ley, el historial legislativo, la experiencia en la jurisdicción federal y las estatales, así como la doctrina de legitimación activa en el foro local antes discutida, concluimos que la frase “adversamente afectada” significa que la parte recurrente tiene un interés sustancial en la controversia porque sufre o sufrirá una lesión o daño particular que es causado por la acción administrativa que se impugna mediante el recurso de revisión judicial. El daño tiene que ser claro, específico y no puede ser abstracto, hipotético o especulativo. Esto asegura que resolvamos “controversias genuinas surgidas en- *580 tre partes opuestas que tienen mi interés real de obtener un remedio que haya de afectar sus relaciones jurídicas”. E.L.A. v. Aguayo, supra. Conforme con lo anterior, para que un litigante pueda solicitar la intervención del tribunal mediante el mecanismo de revisión judicial, ésta tiene que demostrar (1) que es parte y (2) que es o será adversa-mente afectada por la actuación administrativa que se impugna.
Es claro, según menciona el profesor Fernández Quiñones, que la evaluación de la legitimación activa de la “parte obvia” no presenta problema alguno, ya que ésta es la persona que ha sido sujeto u objeto de la decisión administrativa. Esto responde a que la intervención administrativa con esta parte puede causarle un daño ya sea ordenándole que cese y desista de actuar de determinada manera, confirmar o revocar un despido o negarle un permiso, entre otras actuaciones administrativas posibles. Véase Fernández Quiñones, op. cit., pág. 500.
Así también, en la mayoría de las situaciones, evaluar la legitimación activa del interventor o de aquél que se hizo formar parte tampoco debe confrontar mayor dificultad, ya que la agencia lo hizo parte porque demostró ante ella el interés sustancial que sería afectado adversamente por la decisión administrativa. Como bien señala la doctrina, el asunto de legitimación activa para la revisión judicial está relacionado con el asunto sobre quién tiene derecho a ser oído ante la agencia. Schwartz, op. cit., pág. 496. Por lo tanto, en la mayoría de los casos, aquel que tiene derecho a ser oído ante la agencia como “parte” según lo define la ley, también tiene derecho a revisar la determinación adminis-trativa ante el foro judicial. Esto responde a que, usual-mente, quien tiene derecho a ser oído es aquel que podría ser afectado adversamente por la determinación administrativa. Ahora bien, el análisis en uno u otro caso es si la parte sufrirá un efecto adverso. Véase Schwartz, op. cit., Sec. 6.1, pág. 294 (“As a general proposition, one *581 who has the right to be heard before the agency should have standing to seek review and vice versa. The test in either case is that of adverse effect; existence of such an effect that is not too remote should give the individual the right to appear at both the administrative and the judicial levels”).
Usualmente el interventor es quien podría ser adversamente afectado por la decisión administrativa. Es ante la amenaza de un daño a sus intereses, que una persona que no ha sido parte original ante la agencia procura la intervención. Una vez se convierte en interventor, la ley le reconoce entonces, la legitimación activa para presentar una revisión judicial de la determinación final de la agencia si ésta le afecta adversamente. Véanse: Junta Dir. Portofino v. P.D.C.M., supra; Lugo Rodríguez v. J.P, 150 D.P.R. 29 (2000). Es decir, si el interventor —por ser parte— recurre ante el tribunal y demuestra que la decisión administrativa le afecta adversamente, esto es que sufrirá un daño particular, concreto y que no sea especulativo como resultado de la actuación administrativa, éste tendrá legitimación activa para presentar el recurso de revisión judicial al amparo de la L.P.A.U.
Claro está, esto no quiere decir que para evaluar el interés legítimo de quien solicite intervención en el procedimiento administrativo, se tenga que demostrar que ese solicitante tiene una acción legitimada. Como bien menciona el profesor Fernández Quiñones, “la frase [interés legítimo] no significa que se posea una acción legitimada”. El criterio central para determinar si se posee legitimación es si la persona disfruta de un interés adversario en el procedimiento. Fernández Quiñones, op. cit., pág. 145. Añade el profesor Fernández Quiñones que ese no puede ser el criterio porque la agencia tiene un ámbito de discreción amplio por lo flexible que son sus procedimientos y porque, si le exigiéramos tal interés, estaríamos llevando a cabo una incursión en el terreno de lo que define a una *582 parte. Una parte puede carecer de legitimación activa para instar el recurso de revisión judicial, pero puede ser consi-derada como agraviada e interesada en participar e inter-venir en el procedimiento administrativo. Id. Véase San Antonio Maritime v. P.R. Cement Co., supra.
Además, la ley le reconoce a la agencia liberalidad para evaluar los criterios que tiene que tomar en consideración para determinar si procede la intervención. Por lo tanto, cónsono con lo que resolvió este Tribunal en San Antonio Maritime v. P.R. Cement Co., supra, al evaluar una solicitud de intervención la agencia no tiene que exigir que el solicitante tenga una acción legitimada, ya que las agencias no tienen una limitación de caso o controversia. Ahora bien, si ese interventor que ya es “parte” recurre en revisión y demuestra que es o estará adversamente afectado por la determinación de la agencia, la ley le reconoce entonces la legitimación activa para presentar una revisión judicial de la determinación final de la agencia al amparo de la See. 4.2 de la L.P.A.U, supra. En esa situación estamos ante un caso y una controversia real.
En cuanto a la legitimación activa de las asociaciones, éstas pueden solicitar la revisión si son partes y la actuación les afecta adversamente. Como bien mencionamos anteriormente, este Tribunal ha reconocido que si la parte litigante es una asociación, ésta tiene legitimación para solicitar la intervención judicial por los daños sufridos por la agrupación y para vindicar los derechos de la entidad. Claro está, si la asociación comparece en defensa de sus intereses, le corresponde demostrar un daño claro, palpable, real, inmediato, preciso, no abstracto o hipotético a su colectividad. Si la agrupación acude al foro judicial a nombre de sus miembros aunque ésta no haya sufrido daños propios, tiene que demostrar que uno de sus miembros: (1) tiene legitimación activa para demandar a nombre propio; (2) los intereses que se pretenden proteger están relacionados con los objetivos de la organización, y (3) la recia- *583 mación y el remedio solicitado no requieren la participa-ción individual.
Respecto al requisito del daño que tiene que sufrir la persona natural o jurídica que acude ante el foro judicial, hemos reconocido que la lesión se puede basar en conside-raciones ambientales, recreativas, espirituales o estéticas. Específicamente, respecto a la lesión ambiental, en Sierra Club v. Morton, supra, el Tribunal Supremo federal reco-noció la legitimación activa de las organizaciones ambien-tales dedicadas a la conservación y protección del am-biente, algo que posteriormente adoptamos en Salas Soler v. Srio de Agricultura, supra. El Tribunal Supremo federal manifestó en Sierra Club v. Morton, supra, pág. 734:
Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process.
Sin embargo, el Tribunal Supremo federal manifestó que el requisito de demostrar una lesión propia y particu-larizada significa que el recurrente tiene que estar entre las personas o entidades afectadas por la decisión de la agencia. Sierra Club v. Morton, supra, págs. 734-735 (“[T]he ‘injury in fact’ test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured”). En ese sentido, el mero interés en el asunto no es suficiente para establecer que una parte fue adversamente afectada por la decisión de la agencia sin importar cuán bien cualificada esté la organización recurrente para evaluar el problema. Así lo enfatizó el Tribunal Supremo federal:
It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review. ... But a mere “interest in a problem,” no matter how longstanding the interest and no matter how qualified the or *584 ganization is in evaluating the problem, is not sufficient by itself to render the organization “adversely affected” or “aggrieved”. Sierra Club v. Morton, supra, pág. 739.
El Tribunal enmarcó la discusión en el requisito consti-tucional de caso y controversia, y enfatizó que requerir que la parte recurrente alegue hechos que demuestren que es o será una parte adversamente afectada, no aísla o evita la revisión judicial de las acciones del ejecutivo, ni es un obs-táculo para proteger el interés público mediante el proceso judicial.
The requirement that a párty seeking review must allege facts showing that he is himself adversely affected does not insulate executive action from judicial review, nor does it prevent any public interest from being protected through the judicial process. Sierra Club v. Morton, supra, pág. 740.
Por el contrario, esta exigencia procura que la decisión sobre si se acude o no a revisar la actuación de la agencia la tome la persona realmente afectada por la decisión que se impugna.
It does serve as at least a rough attempt to put the decision as to whether review will be sought in the hands of those who have a direct stake in the outcome. This goal would be undermined were we to construe the APA to authorize judicial review at the behest of organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process. Sierra Club v. Morton, supra.
Conforme con lo anterior, Davis opina:
An organization favoring a particular policy should not have standing to challenge any governmental action contrary to that policy unless it represents members who are in fact adversely affected. Davis, op. cit., pág. 438.
En síntesis, para que una organización pueda acudir al foro judicial por un interés ambiental, estético o recreativo, ésta tiene que demostrar que: (1) al menos uno de sus miembros tendría legitimación activa, y (2) que los *585 intereses del miembro que se procuran proteger estén ínti-mamente relacionados con los objetivos o propósitos de la organización.
Por último, es menester reafirmar que “ ‘nuestro sistema es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore’ ”. JP, Plaza Santa Isabel v. Cordero Badillo, supra, pág. 201, citando a S.L.G. Lloréns v. Srio. de Justicia, 152 D.P.R. 2, 8 (2000). Claro está, hemos reconocido que los requisitos de legitimación activa deben interpretarse de forma flexible y liberal, particularmente al atender reclamos dirigidos contra las agencias y funcionarios gubernamentales. García v. Junta de Planificación, 140 D.P.R. 649 (1996). Sin embargo, esto no implica que se haya abandonado “el requisito de que todo litigante tiene que demostrar que ha sufrido un daño concreto y palpable para que los tribunales consideren su reclamo en los méritos”. Romero Barceló v. E.L.A., 169 D.P.R. 460, 511 (2006), opinión disidente de la Juez Asociada Señora Rodríguez Rodríguez.
En el contexto de la revisión judicial de la actuación administrativa, este Tribunal ha manifestado que la persona o entidad que pretenda solicitar la intervención judicial tiene el peso de probar su legitimación en todas las etapas. Corresponde al litigante demostrar que tiene no solamente la capacidad para demandar, sino que también tiene legitimación activa. Col. Peritos Elec. v. A.E.E., supra, págs. 341-342. Así también, quien solicite la intervención judicial mediante el recurso de revisión provisto por la L.P.A.U. tiene el peso de demostrar que tiene legitimación conforme las disposiciones de dicha ley. Esta legitimación se demuestra mediante la alegación de hechos que permitan el foro judicial constatar que es parte adversamente afectada por la decisión que se impugna. Claro está, aquí también rige la norma que establece que cuando se cues- *586 tiona la legitimación de una parte para entablar un pleito, el juzgador debe tomar como ciertas las alegaciones de he-chos del reclamante e interpretarlas desde el punto de vista más favorable a éste. Crespo v. Cintrón, 159 D.P.R. 290, 299 (2003).
Conforme con el derecho expuesto, procedemos a auscul-tar si los peticionarios, la Fundación Surfrider y el Sr. León J. Richter, han demostrado tener legitimación activa para presentar el recurso de revisión judicial ante el Tribunal de Apelaciones, así como el recurso de certiorari que nos ocupa.
III
Es meritorio señalar que para este caso y debido a que la norma sobre el requisito de parte fue modificada con efectividad prospectiva en JP, Plaza Santa Isabel v. Cordero Badillo, supra, luego de los hechos que dan lugar a esta controversia, el requisito de parte lo evaluaremos se-gún la figura del “participante activo” emitida en Lugo Rodríguez v. J.P., supra. Según esta figura, se consideraba “parte” para fines de la revisión judicial, quien participó activamente durante el procedimiento administrativo y cu-yos derechos y obligaciones pueden verse adversamente afectados por la acción o inacción de la agencia. Junta Dir. Portofino v. P.D.C.M, supra; Ocean View v. Reina del Mar, 161 D.P.R. 545 (2004); Lugo Rodríguez v. J.P., supra. Conforme con lo anterior, para que al reclamante se le consi-dere “parte” con derecho a revisión judicial según la figura del participante activo establecida en Lugo Rodríguez v. J.P., supra, el litigante tiene que demostrar que “sus dere-chos y obligaciones pueden verse afectados por la acción o inacción de la agencia”, esto es, un daño o lesión particularizada. Por lo tanto, procedemos a evaluar el se-gundo requisito para poder tener legitimación activa y pro- *587 curar la revisión judicial, esto es, si los peticionarios serán afectados adversamente por la actuación administrativa que se impugna.
En este caso, los peticionarios impugnaron una determi-nación de A.R.Pe. en la que se aprobó un anteproyecto con variaciones al predio objeto de esta controversia, ubicado en un distrito de zonificación RT-0. Se solicitaron variacio-nes sobre los requisitos de densidad, altura y área bruta de piso. Según la norma antes discutida, para poder impug-nar esta determinación los peticionarios tenían que demos-trar que sufrirían un daño o lesión particular por la apro-bación del anteproyecto, es decir, cómo las variaciones les afectaban adversamente. El hecho de ser vecino, sin más, no le confiere legitimación a quien impugne una determi-nación de una agencia, ya sea en casos de permisos de construcción o en casos de zonificación y planificación. Siempre es imprescindible que el recurrente satisfaga el requisito de daño y la relación causal de esa lesión con la actuación administrativa.
Según la norma aplicable, el señor Richter no logró de-mostrar que se verá adversamente afectado por la determi-nación administrativa. En la comparecencia ante el Tribunal de Apelaciones así como en el recurso de certiorari presentado ante nos, el señor Richter escuetamente alegó lo siguiente: (1) que reside “en el barrio Ensenada de Rin-cón, cerca del proyecto objeto del caso de autos”, (2) que actualmente está afectado por un problema de distribución de agua, (3) que “entiende que este problema se agravará con el aumento de consumo que significa este proyecto”, (4) “que sus intereses se verán afectados porque este tipo de desarrollo aumenta la densidad poblacional y por lo tanto rompe la armonía y altera las características de su vecindario”. Apéndice, pág. 121. Tanto en los foros judicia-les como en las comparecencias en el procedimiento admi-nistrativo, el señor Richter escuetamente alegó que es “ve-cino” del proyecto, pero no indicó dónde reside. Lo único *588 que aparece en la hoja de notificación del recurso ante nuestra consideración es un apartado postal. No se alegó en el recurso la dirección residencial del copeticionario y cuán próxima está la alegada residencia al proyecto en cuestión. De hecho, en todas las comparecencias ante la agencia y ante los foros judiciales, se establece dónde se ubicará el proyecto en el Barrio Ensenada. Sin embargo, no hay dato alguno sobre dónde reside Richter ni cuán próxima está su residencia del proyecto en cuestión.
Era necesario que el copeticionario estableciera la proxi-midad de su residencia con relación al proyecto, ya que los intereses que alega que se verán afectados por la decisión administrativa dependen de ese hecho. La distancia entre la residencia de Richter y el proyecto es un elemento clave para poder evaluar si el alegado aumento en el ruido y movimiento vehicular le afectaría. Ni siquiera sabemos si el señor Richter tiene que transitar por el área cercana al proyecto. También era necesario que nos indicara su ubi-cación respecto al proyecto, ya que se alega que éste, según aprobado con las variaciones, “rompe la armonía y altera las características de su vecindario”. Apéndice, pág. 121. El hecho de que el copeticionario viva en el Barrio Ensenada no significa que resida en el mismo vecindario en dónde estará ubicado el proyecto, pues un barrio puede ser tan extenso que contenga varios vecindarios. De hecho, ni si-quiera se alegó que el peticionario reside en el mismo ve-cindario dónde se desarrollaría el proyecto.
Por último, el señor Richter alega que se verá afectado por la decisión administrativa, ya que “entiende” que el alegado problema de distribución de agua se intensificará con la construcción del proyecto. Esta es una alegación es-peculativa y conclusoria. Además, como no se alegó la ubi-cación de la residencia ni la proximidad de ésta respecto al predio del proyecto, no podemos saber si el sector donde está ubicada la residencia se suple de la misma toma de agua que el proyecto. Estamos ante meras opiniones y con-clusiones de los peticionarios sin datos que las sustenten.
*589 Ante la insuficiencia de una base fáctica no podemos determinar si el copeticionario, el señor Richter, sería afec-tado por la determinación administrativa. La escueta ale-gación sobre su calidad de “vecino del proyecto” no puede darle legitimidad al copeticionario para impugnar la deci-sión administrativa. Permitir que una alegación tan im-precisa y general pueda conferir legitimación activa, abri-ría las puertas para que cualquier persona que participe en un procedimiento administrativo y se limite a alegar que es vecino del proyecto impugnado, reclame ser parte para fines de la revisión judicial sin establecer o demostrar que, en efecto, sus derechos se afectarían por la determinación final de la agencia. Resuelto esto, procedemos a evaluar la legitimación de la copeticionaria, la Fundación Surfrider.
B. Según discutimos anteriormente, una asociación puede presentar un recurso de revisión judicial a nombre propio o en representación de sus miembros. Evaluaremos primero la legitimación de la asociación para presentar el recurso de revisión judicial a nombre propio.
La Fundación Surfrider, Inc. alegó tener interés en la controversia porque entre sus objetivos institucionales se encuentra la protección y conservación de los océanos, así como la protección de los accesos a las playas. En ese sen-tido, la Fundación puede que tenga interés en participar en el procedimiento adjudicativo ante la agencia, pues el proyecto impugnado se llevará a cabo en el municipio de Rincón, reconocido por sus costas y sus playas. Sin embargo, esto no es suficiente para cumplir con el interés re-querido para ser “parte” con derecho a revisión judicial, según la norma discutida.
La Fundación Surfrider, Inc. no alegó ni demostró que sufrirá un daño o lesión propia como resultado de la actua-ción administrativa. Nuestro sistema constitucional no le permite convertirse en un vigilante privado del interés pú-blico (private attorney general). Como bien discutimos an- *590 teriormente, cuando una organización alega interés en la controversia conforme a los objetivos ambientales que pro-mueve, es necesario que demuestre que al menos uno de sus miembros sufriría una lesión particular y no generali-zada, ya sea estética o ambiental, como resultado de la actuación administrativa. Claro está, los intereses que se pretenden proteger tienen que estar relacionados con los objetivos de la organización. Como ésta no demostró una lesión propia, procede evaluar si alguno de los miembros de la Fundación tiene legitimación activa para impugnar la decisión administrativa y si el interés individual que se pretende proteger está íntimamente relacionado con los objetivos de la organización.
La Fundación Surfrider, Inc. señaló que el señor Richter y el Sr. John J. Murray son miembros de la organización. Ya resolvimos que el señor Richter no tiene legitimación activa para presentar el recurso de revisión judicial. A igual conclusión llegamos respecto al otro miembro que se incluye en el recurso de revisión judicial ante el Tribunal de Apelaciones y en el recurso de certiorari que nos ocupa, el Sr. John J. Murray, ya que las alegaciones son las mis-mas para ambos.
Además, aun si un integrante de la Fundación tuviera legitimación activa para impugnar la decisión, la organiza-ción no cumplió con el requisito de demostrar que el interés del miembro está relacionado con los objetivos de la organización. Este caso trata sobre la impugnación de un proyecto de construcción y las variaciones a los reglamentos de zonificación. Según los Artículos de Incorporación, los ob-jetivos de la Fundación Surfrider, Inc., son los siguientes:
1. To promote the protection and enjoyment of the world’s waves and beaches, for all people, through conservation, activism, research and education;
2. To preserve and protect unique [and] irreplaceable surfing areas, both along the California coastline and elsewhere in the world, and to promote public awareness of and public access to such areas;
*591 3. To provide educational opportunities for public schools, youth groups and similar community agencies and organizations which promote the sport of surfing and public safety in surfrider areas;
4. To engage in scientific research and to disseminate scientific reports on the design of surfing equipment and the safety of adequacy of surfing products as well as surfing areas; and
5. Such other purposes as are reasonably related thereto. Apéndice, pág. 8.
En síntesis, como bien alegó la Fundación, su objetivo principal es promover el disfrute de los océanos y las pla-yas mediante la conservación, participación, investigación y educación. Estos objetivos, aunque loables, no están re-lacionados con el interés que se pretende, esto es, los daños que alegadamente se causarían por la construcción de un proyecto aprobado con variaciones a los reglamentos de zonificación. Ninguno de los miembros alegó que el pro-yecto afectará su derecho al acceso y disfrute de los océa-nos y las playas. De hecho, en las fotografías aéreas pre-sentadas se atisba que el proyecto ni siquiera colinda con la playa y, por lo tanto, no obstruye el acceso a la costa. Véase Apéndice, pág. 90.
La Fundación alegó que en algún momento trabajó en “temas de zonificación y planificación en el área de Rincón”. Sin embargo, según surge de los Artículos de In-corporación, los objetivos de la organización no están rela-cionados con esos asuntos. Para que las asociaciones pue-dan comparecer a nombre de sus miembros, éstas tienen que fungir como representantes apropiados en defensa de los intereses de sus miembros que serán afectados por la determinación administrativa. A modo ilustrativo, cabe se-ñalar que en casos como el de autos, donde se impugna la aprobación de un proyecto y las variaciones a los reglamen-tos de zonificación, la doctrina generalmente aceptada es-tablece lo siguiente:
To be awarded standing to challenge land use actions, associations must be fairly representative of the community, have *592 open membership, have the capacity and authority to maintain judicial actions, and be organized to protect the interest allegedly affected by the land use action. P.E. Salkin, American Law of Zoning, 5ta ed., Ed. West, 2009, Vol. 4, Sec. 42:14, pág. 42-52.
Así pues, concluimos que la Fundación y sus miembros no tienen legitimación activa para presentar el recurso de revisión judicial al amparo de la See. 4.2 de la L.P.A.U., supra.
IV
Por todo lo anterior, se modifica el dictamen del Tribunal de Apelaciones, Región Judicial de Aguadilla. En su lugar, se desestima el recurso de revisión judicial por falta de justiciabilidad debido a la ausencia de legitimación ac-tiva de los peticionarios para instar el recurso ante el foro apelativo intermedio.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Fiol Matta disintió con una opinión escrita, a la cual se unieron el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodrí-guez Rodríguez.
— O —

 La variación es un mecanismo mediante el cual se dispensa del cumplimiento de los requerimientos propios de los distritos de zonificación.

 Las leyes que rigen el procedimiento administrativo en muchas jurisdiccio-nes estatales contienen disposiciones similares en las que se exigen estos dos requisitos. Véase W.A. McGrath y otros, Project: State Judicial Review of Administrative Action, 43 (Núm. 4) Admin. L. Rev. 571, 634 (otoño 1991).